[No. D061309. Fourth Dist., Div. One. Aug. 22, 2012.]

In re ANTHONY T., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
BROOKE H., Defendant and Appellant;
ANTHONY T., Appellant;
TORRES MARTINEZ DESERT CAHUILLA INDIAN TRIBE, Intervener
and Respondent.

1022

## COUNSEL

Kathleen Murphy Mallinger, under appointment by the Court of Appeal, for Defendant and Appellant.

M. Elizabeth Handy, under appointment by the Court of Appeal, for Appellant minor.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Paula J. Roach, Deputy County Counsel, for Plaintiff and Respondent.

Berkey Williams and Rovianne Leigh for Intervener and Respondent.

## OPINION

**HUFFMAN, Acting P. J.**—Anthony T., a member of the Torres Martinez Desert Cahuilla Indian Tribe, and his mother, Brooke H., a non-Indian, appeal an order placing Anthony in foster care with an Indian family. They contend the placement is not within "reasonable proximity" to the child's home as

required under title 25 United States Code section 1915(b), and Welfare and Institutions Code section 361.31, subdivision (b).[1] We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

Anthony T., born August 2011, is the son of Brooke H. and Ronald T.[2] Ronald is a registered member of the Torres Martinez Desert Cahuilla Indian Tribe (Tribe). Brooke has no known Indian heritage. The parents, who are not in a relationship, have histories of substance abuse and child welfare interventions. None of Brooke's or Ronald's other children are in their custody. Brooke's two other children are in a guardianship with relatives. Three of Ronald's children were adopted by tribal members through dependency proceedings; two others are with an Indian custodian.

On November 3, 2011, the San Diego County Health and Human Services Agency (Agency) filed a petition on Anthony's behalf after he was detained in protective custody by police, who were responding to reports of a fight at Brooke's home. Brooke, who had left the scene and returned as the police were leaving with Anthony, was arrested for public intoxication. Police determined that both Ronald and Brooke were too intoxicated to care for Anthony. Both parents were charged with child endangerment.

The Tribe promptly intervened in Anthony's dependency proceedings.

The Agency placed Anthony in a foster home in northern San Diego County. The foster mother had some Indian heritage but not through the Tribe.

On December 15, the Tribe passed a resolution (Tribal Resolution) designating the home of Mr. and Mrs. H. (the H.'s) as "the tribally approved and culturally appropriate concurrent adoptive or foster home" for Anthony. The H.'s lived in Riverside County, approximately two and a half hours from Brooke and Anthony's home in northern San Diego County. The Tribal Resolution stated the Tribe's primary goal was family reunification. Until the family was reunified, or in the event family reunification could not be safely achieved, placement with the H.'s was in Anthony's best interests as an Indian child because it preserved, protected and encouraged his connection to the Tribe, its culture and community, and his tribal relatives.

The court adjudicated Anthony a dependent of the juvenile court on January 12, 2012. (§ 300, subd. (b).) At the Tribe's request, and over the

---

[1] Unless otherwise indicated, further statutory references are to the Welfare and Institutions Code.

[2] Ronald does not appeal. He is mentioned in this opinion when his circumstances are relevant to the issues presented for review.

Agency's and Brooke's objections, the court detained Anthony with the H.'s. Noting the placement created a "geographic barrier" to visitation, the court ordered the Tribe to transport Anthony to northern San Diego County for supervised visits with Brooke. The court said the temporary placement would allow the parties to assess the feasibility of the placement. If the distance created any problems with visitation, the court would reconsider its order at the dispositional hearing.

The dispositional hearing was held on January 24 and 25. The court admitted in evidence the Agency's reports and the declaration of Silvanna Osuna, an Indian expert, and took judicial notice of the Tribal Resolution. The court heard testimony from Osuna; social worker Sara Whitney; and Annette Chihuahua, tribal delegate and ICWA (Indian Child Welfare Act of 1978; 25 U.S.C. § 1901 et seq.) case assistant.

Osuna said Anthony should remain in his current placement with the H.'s. She believed an Indian child should always be placed with a relative or tribal member, if that person was suitable.

Social worker Whitney did not object to Anthony's placement with the H.'s. Nevertheless, she was concerned about the distance from the H.'s home to the Agency's office in Escondido, where visitation would occur. In view of Anthony's age, visits should occur at least twice a week to promote the parent/child relationship. A one-way trip was two and a half hours, which was a long time for a child to be in a car.

Whitney testified the Agency did not have the resources to facilitate twice-weekly visits between Anthony in Riverside County and Brooke in San Diego County. The Tribe said it would help transport Anthony to the Agency's Escondido office or arrange for Brooke to visit Anthony in the H.'s home.

In November and December, the Agency offered to schedule visitation between Brooke and Anthony three times a week. As far as Whitney knew, Brooke visited Anthony twice after he was detained in protective custody, once at Polinsky Children's Center and once at the previous foster parents' home. After the January 12 hearing, the parties scheduled a visit but Brooke cancelled it, saying she was ill. A second visit was not set up because Brooke did not know her class schedule. Whitney wanted to schedule a visit at the Agency's offices on January 12 from 11:00 a.m. to 1:00 p.m., but Brooke did not have time to visit Anthony before the hearing. Whitney acknowledged that scheduling visitation had been difficult.

When Whitney finished testifying, the court noted that Anthony, who was outside the courtroom with Mrs. H., had been "screaming and yelling and crying for the last few hours" and was a "little bit cranky" after his nap.

Tribal delegate Chihuahua testified that after the last hearing, they discussed scheduling visits on January 18 and 24, and visitation in general. Chihuahua understood that visits would occur twice a week on the same day for both parents. Tuesdays and Thursdays would probably work for her, depending on her calendar. She was responsible for visitation in other cases. Chihuahua acknowledged that during the previous week, she had only one day available for a visit between Anthony and Brooke. When asked whether arranging visitation was difficult, Chihuahua replied, "I just feel it is difficult because it is a long ride for [Anthony], too, and so—and mom [doesn't] have a car, right?"[3]

Chihuahua said Brooke cancelled the January 18 visit, saying she was ill. Brooke asked about visiting Anthony on January 23, but Chihuahua was not available on that date. They did not reschedule the January 18 visit. Chihuahua testified that Brooke did not cancel the January 24 visit, but she asked to change the time from 11:00 a.m. to 12:30 p.m. Brooke said she had a visit scheduled for January 25 but Chihuahua was not aware of it. Brooke asked for Saturday visits but Chihuahua was not available due to an ongoing commitment in another case. Chihuahua testified that she might be able to accommodate Brooke's request for Saturday visits by the end of February.

Chihuahua said if the court ordered twice-weekly visitation, the Tribe would abide by that order. She did not know whether the Tribe would be able to facilitate visits three times a week because of their other cases. They might be able to find other tribal members who could assist with transportation. Funding for transportation was not an issue with the Tribe. The issue was scheduling.

The court removed Anthony from parental custody. It found that the parties opposing Anthony's placement with the H.'s did not establish good cause not to follow ICWA placement preferences, and placed Anthony with the H.'s. Noting that Brooke had expressed little, if any, interest in visiting Anthony while he was placed in northern San Diego County, the court ordered liberal supervised visitation for the parents and authorized the Agency to implement unsupervised visitation with notice to minor's counsel, and weekend and overnight visits with the concurrence of minor's counsel.

---

[3] As a result of her 2009 DUI (driving under the influence) conviction, Brooke's driver's license was suspended.

## DISCUSSION

### I

### *OVERVIEW*

"The United States Congress enacted ICWA to respond to a crisis in which large numbers of Indian children were being removed from their families for placement in non-Indian homes. (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32 [104 L.Ed.2d 29, 109 S.Ct. 1597] (*Holyfield*).) ICWA was designed to protect the best interests of Indian children and promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families by state courts and the placement of such children in foster or adoptive homes. (25 U.S.C. § 1902; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421 [285 Cal.Rptr.507].)" (*In re Jack C.* (2011) 192 Cal.App.4th 967, 975–976 [122 Cal.Rptr.3d 6].)

To meet its goal to place children in foster or adoptive homes which reflect the unique values of Indian culture, ICWA establishes placement preferences for Indian children who have been removed from their families. (25 U.S.C. §§ 1902, 1915(b); Welf. & Inst. Code, § 361.31.) An Indian child in foster care must be placed in "the least restrictive setting which most approximates a family . . . within reasonable proximity to his or her home, taking into account any special needs of the child." (25 U.S.C. § 1915(b); see Welf. & Inst. Code, § 361.31, subd. (b).) In the absence of good cause to the contrary, the preferred placement order for an Indian child is with a member of the child's extended family; a foster home approved by the Indian child's tribe; an Indian foster home; or an institution for children approved by an Indian tribe or operated by an Indian organization. (§ 361.31, subd. (b).)

Brooke and Anthony[4] contend the evaluation of an appropriate placement for an Indian child is a two-step process. They argue that unless the court first determines that the placement is reasonably proximate to the child's home, the placement preferences under title 25 United States Code section 1915(b), and Welfare and Institutions Code section 361.31, subdivision (b), do not apply. They further argue the evidence is insufficient to support a "reasonable proximity" finding because the distance between the two homes does not support frequent, liberal visitation. Brooke and Anthony contend Anthony's placement significantly burdens the implementation of the case plan, compromising family reunification and denying Brooke equal protection of the law

---

[4] Anthony joins in Brooke's brief.

because her child is a member of an Indian tribe. They also assert the court impermissibly delegated responsibility for visitation from the Agency to the Tribe.

The Agency responds that ICWA's "reasonable proximity" requirement is one of many factors the court considers in determining a placement for an Indian child, but it does not control the placement. It asserts the court properly considered the distance between the two homes when it detained Anthony with the H.'s, and argues there is substantial evidence to support a finding the placement was within reasonable proximity to the child's home. The Agency contends the court did not improperly delegate responsibility for visitation to the Tribe. Instead, accepting the Tribe's offer to assist with transportation to facilitate visits was in full accord with section 361.31, subdivision (g), which directs the court to use the services of the Indian tribe to secure and supervise the Indian's child placement.

The Tribe states the placement preference is ICWA's most important substantive requirement. It argues the court is not required to make separate preliminary findings the placement is reasonably proximate and least restrictive. Instead, the court must apply the placement preferences unless it finds good cause not to do so. The Tribe asserts there is substantial evidence to support the court's finding there was not good cause to deviate from the Tribe's preferred placement, and argues Anthony's removal from the Tribe's preferred home would infringe on its inherent sovereign authority over tribal members and domestic relations.

The parties' contentions concern issues of statutory interpretation, which we review de novo. (*Librers v. Black* (2005) 129 Cal.App.4th 114, 124 [28 Cal.Rptr.3d 188].)

## II

Title 25 United States Code section 1915(b) states: "Any child accepted for foster care or preadoptive placement shall be placed in the least restrictive setting which most approximates a family and in which his special needs, if any, may be met. *The child shall also be placed within reasonable proximity to his or her home, taking into account any special needs of the child.* In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with [¶] (i) a member of the Indian child's extended family; [¶] (ii) a foster home licensed, approved, or specified by the Indian child's tribe; [¶] (iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or [¶] (iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs." (Italics added.)

California's placement-preference statute for Indian children, section 361.31,[5] restates in large part title 25 United States Code section 1915. (*In re A.A.* (2008) 167 Cal.App.4th 1292, 1327 [84 Cal.Rptr.3d 841].)

■ Statutes passed for the benefit of Indian tribes are to be liberally construed in favor of the tribes. (*Bryan v. Itasca County* (1976) 426 U.S. 373, 392 [48 L.Ed.2d 710, 96 S.Ct. 2102]; *Alaska Pacific Fisheries v. United States* (1918) 248 U.S. 78, 89 [63 L.Ed. 138, 39 S.Ct. 40].) Any ambiguity in statutes affecting an Indian tribe must be resolved in its favor. (*McClanahan v. Arizona State Tax Comm'n* (1973) 411 U.S. 164, 174 [36 L.Ed.2d 129, 93 S.Ct. 1257].) ■ ICWA must be liberally construed in favor of the policy to defer to tribal judgment in Indian child custody matters. (Bur. of Indian Affairs, Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67585, § A (Nov. 26, 1979) (BIA Guidelines).)

■ Because the statutory language is generally the most reliable indicator of legislative intent, we look first at the words themselves, giving them their usual and ordinary meaning and construing them in context. (*People v. Johnson* (2002) 28 Cal.4th 240, 244 [121 Cal.Rptr.2d 197, 47 P.3d 1064].) ■ Both title 25 United States Code section 1915(b) and Welfare and Institutions Code section 361.31, subdivision (b), clearly state the child *shall* be placed within reasonable proximity to his or her home. Those statutes further provide that absent good cause to the contrary, the court *shall* give preference to placement with a member of the child's extended family, a foster home approved by the Indian child's tribe, an Indian foster home, or a suitable institution. (25 U.S.C. § 1915(b); Welf. & Inst. Code, § 361.31, subd. (b).) ■ The word "shall" is used to express a command. (Webster's 3d New Internat. Dict. (2002) p. 2085, col. 1 ["shall" is mandatory].)

■ According to the plain terms of the statutes, the court may not select a placement for an Indian child unless that placement is within "reasonable proximity" to the child's home. "Proximate" is defined as "very near." (Webster's 3d New Internat. Dict., *supra*, at p. 1828, col. 2.) In other words,

---

[5] Section 361.31, subdivision (b) states: "Any foster care or guardianship placement of an Indian child, or any emergency removal of a child who is known to be, or there is reason to know that the child is, an Indian child shall be in the least restrictive setting which most approximates a family situation and in which the child's special needs, if any, may be met. *The child shall also be placed within reasonable proximity to the child's home, taking into account any special needs of the child.* Preference shall be given to the child's placement with one of the following, in descending priority order: [¶] (1) A member of the child's extended family . . . . [¶] (2) A foster home licensed, approved, or specified by the child's tribe. [¶] (3) An Indian foster home licensed or approved by an authorized non-Indian licensing authority. [¶] (4) An institution for children approved by an Indian tribe or operated by an Indian organization . . . ." (Italics added.) The court may determine that good cause exists not to follow placement preferences, considering, where appropriate, the placement preference of the Indian child, when of sufficient age, and the parent. (§ 361.31, subds. (e), (h).)

because "reasonable proximity" is mandatory, a finding that the placement is not within reasonable proximity to the child's home will constitute good cause not to follow ICWA placement preferences.[6] It is not, as the Agency contends, merely one factor out of many the court may consider in determining an Indian child's foster care or preadoptive placement.

■ A statute is read with reference to the entire scheme of law of which it is part. (*State Farm Mutual Automobile Ins. Co. v. Garamendi* (2004) 32 Cal.4th 1029, 1043 [12 Cal.Rptr.3d 343, 88 P.3d 71]; *In re Adrianna P.* (2008) 166 Cal.App.4th 44, 57 [81 Cal.Rptr.3d 918] [the language is construed in the context of the statute as a whole and the overall statutory scheme, and courts give significance to every word, phrase, sentence and part of an act in pursuing the legislative purpose].) ■ ICWA placement preferences are clearly mandated under federal and state law. (25 U.S.C. § 1915(b); Welf. & Inst. Code, § 361.31, subd. (b).) We keep in mind that Indian lands may be at some distance from major metropolitan areas. However, in most cases in which a child has been removed from parental custody, the priority is on family reunification. (See *In re Alanna A.* (2005) 135 Cal.App.4th 555, 563 [37 Cal.Rptr.3d 579].) Family reunification is also mandated by federal and state law. (42 U.S.C. § 621; Welf. & Inst. Code, § 361.5, subd. (a).) The court must also ensure that visitation between parent and child is "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) Absence of visitation may "virtually [assure] the erosion (and termination) of any meaningful relationship between [parent and child]." (*In re Brittany S.* (1993) 17 Cal.App.4th 1399, 1407 [22 Cal.Rptr.2d 50].) When the primary goal of the dependency proceedings is family reunification, the location of an Indian child's placement must reasonably support that goal, including frequent visitation between parent and child. (42 U.S.C. §§ 621, 629; Welf. & Inst. Code, §§ 300.2, 362.1, subd. (a)(1)(A), 361.5, subd. (a).)

■ Thus, when there is a controversy about whether a placement is within reasonable proximity to the child's home, the issue will be determined on a case-by-case basis considering the child's needs and his or her family's circumstances. It is not simply a matter of determining distance, mileage or travel time. The guiding principle is the child's best interests. (§ 300.2.) What may be a reasonable distance for an older child who has an established

---

[6] We disagree with appellants' contention the burden is on the party proposing the placement to show "reasonable proximity." The applicable statutes direct the court to apply the ICWA placement preferences unless there is good cause to the contrary. (25 U.S.C. § 1915(b); Welf. & Inst. Code, § 361.31, subd. (b).) Although appellants' argument is not without merit, we liberally construe the statutes in favor of the Indian tribe. (*Bryan v. Itasca County, supra*, 426 U.S. at p. 392.) In view of the policy favoring an Indian child's placement according to statutory placement preferences, the party opposing the placement has the burden to show there is good cause not to follow the preferences. (§ 361.31, subd. (j); BIA Guidelines, 44 Fed.Reg. 67584, 67594–67595, § F.1, 3 (Nov. 26, 1979).)

relationship with his or her parent and who may augment in-person visitation with other forms of contact may be an unreasonable placement for an infant whose only meaningful interactions with a parent arise from face-to-face contact. In some cases, a parent may have the means and time to travel to the child. The court may also consider the tribal resources that are available to facilitate frequent visitation, consistent with the child's best interests and the goal of family reunification. (See § 361.31, subd. (g) ["Any person or court involved in the placement of an Indian child shall use the services of the Indian child's tribe, whenever available through the tribe, in seeking to secure placement within the order of placement preference . . . and in the supervision of the placement."].)

### III

### THERE IS NOT SUBSTANTIAL EVIDENCE TO SUPPORT A FINDING THAT ANTHONY'S PLACEMENT WAS WITHIN REASONABLE PROXIMITY TO HIS HOME

When detaining Anthony with the H.'s, the court found there was a "geographic barrier" to visitation because of the distance from the H.'s home in Riverside County to the child's home in northern San Diego County. Instead of assessing whether the placement was reasonably proximate to the child's home, the court deferred to the Tribe's placement preference. The court ordered liberal supervised visitation, noting that if the Tribe were unable to comply with the visitation order, it would create an issue whether reasonable services were offered or provided to the parents. We conclude that there is no credible evidence to show the placement would reasonably support liberal visitation between Anthony and Brooke, commensurate with the child's best interests and the goal of family reunification.

 A placement that presents a geographical barrier to visitation is presumptively not within reasonable proximity to the child's home. Here, social worker Whitney recommended that visits occur at least twice a week. This arrangement would require Anthony to spend at least 10 hours a week in a car. Chihuahua said each visit would be "a day visit in San Diego." Both Whitney and Chihuahua were concerned about the impact of the lengthy car ride on Anthony's well-being. The trip would interfere with Anthony's daily schedule, including napping, meals and playtime. Further, Anthony's "cranky" behavior at the dispositional hearing, during which he screamed, yelled and cried "for a few hours," indicates that such a visitation arrangement would be detrimental to his well-being.

In addition, the record does not show there were reasonable alternatives to transporting Anthony the lengthy distance to and from visitation.[7] Brooke could not legally drive. The location of the two homes was not conducive to meeting closer to the child's location.[8] The record also shows that the visitation schedule would be relatively inflexible. Chihuahua was not able to accommodate Brooke's request to reschedule a visit or to supervise visits on Saturdays. Under the circumstances that existed at the time of the dispositional hearing, there was a substantial likelihood that visitation would be limited and problematic, contrary to the express purpose of the dependency scheme. (§ 300.2 [the focus shall be on the preservation of the family as well as the safety, protection, and physical and emotional well-being of the child]; see 42 U.S.C. §§ 621, 629; Welf. & Inst. Code, §§ 362.1, subd. (a)(1)(B), 361.5, subd. (a).) We conclude that in view of the travel time, the child's age and needs, and the family's circumstances, Anthony's placement was not within reasonable proximity to his home and the court erred when it determined there was not good cause to deviate from the Tribe's preferred placement. (25 U.S.C. § 1915(b); Welf. & Inst. Code, § 361.31, subd. (b).)

Because there is not substantial evidence to support the order placing Anthony with the H.'s, we need not consider Brooke's argument the placement interfered with her opportunity to reunify her family, denying her equal protection of the law as guaranteed under the Fourteenth Amendment to the United States Constitution and article I, section 7 of the California Constitution. However, because ICWA placement preferences may still apply in this case, we address the Tribe's contention that Anthony's removal from the H.'s home would infringe on its sovereignty.

---

[7] At oral argument, the Agency argued there is substantial evidence to support a reasonable proximity finding because the Tribe was willing to transport Brooke for visits with Anthony. The record shows that at the detention hearing, the Tribe's attorney told the court that the Tribe "may also additionally be willing to help mom get up to Mecca near the Tribe's reservation" to allow her to visit Anthony. Unsworn statements of counsel are not evidence. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413–414, fn. 11 [2 Cal.Rptr.3d 683, 73 P.3d 541].) At the disposition hearing, in response to a single question, Chihuahua said the Tribe was willing to provide transportation services to Brooke. However, the focus of the visitation plan was to transport Anthony to San Diego County. In commenting on visitation, the court noted it "would be a shame to have the minor driven all the way here . . . to have mother cancel at the last minute." There was no testimony about arrangements to help Brooke travel to Riverside County. Further, even if the Tribe was willing to transport Brooke for visitation, there is no showing that the visitation arrangements would be reasonable in view of Brooke's other responsibilities and commitments. Thus we are not persuaded by the Agency's argument.

[8] Even if a two- to three-hour round trip for visitation was reasonable for an infant, the topography of the region makes finding an alternative location for visitation problematic. The Santa Rosa and San Jacinto Mountains National Monument, Palomar Mountain State Park and the Anza-Borrego Desert State Park are between the two locations. (Dept. of Parks and Recreation <http://www.parks.ca.gov/ParkIndex> [as of Aug. 22, 2012]; U.S. Dept. of Interior, Bur. of Land Management <http://www.blm.gov/ca/st/en/fo/palmsprings/santarosa.html> [as of Aug. 22, 2012].)

## IV

### *A STATE COURT'S DETERMINATION OF ICWA PLACEMENT PREFERENCES DOES NOT INFRINGE ON TRIBAL SOVEREIGNTY*

The Tribe argues Anthony's removal from the Tribe's preferred placement would infringe on its inherent sovereign authority over tribal members and domestic relations.[9] We disagree. While "there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children . . ." (25 U.S.C. § 1901(3); see Welf. & Inst. Code, § 224, subd. (a)(1)), this tribal interest is not superior to the parent's fundamental interest in his or her child. (*Holyfield, supra,* 490 U.S. at p. 52, quoting *In re Adoption of Halloway* (Utah 1986) 732 P.2d 962, 969 [" 'the tribe has an interest . . . which is distinct from but on a parity with the interest of the parents . . .' "]; *In re Dakota H.* (2005) 132 Cal.App.4th 212, 223 [33 Cal.Rptr.3d 337] [a parent's interest in the companionship, care, custody and management of his or her child is fundamental].) The child has a compelling independent interest in belonging to his or her natural family, particularly at the beginning of a dependency proceeding. (*Dakota H.,* at p. 223; see *Tonya M. v. Superior Court* (2007) 42 Cal.4th 836, 845–846 [69 Cal.Rptr.3d 96, 172 P.3d 402].) The state, too, has a compelling interest in its children's welfare. (*In re Dakota H., supra,* at p. 223.)

A state court has the responsibility to make decisions concerning the welfare of its dependent children, whether they are Indian or non-Indian. (§ 300.2; *In re Chantal S.* (1996) 13 Cal.4th 196, 201 [51 Cal.Rptr.2d 866, 913 P.2d 1075] [the juvenile court has a special responsibility to the child as *parens patriae* and must look to the totality of a child's circumstances when making decisions regarding the child].) When the state court retains jurisdiction over an Indian child, this responsibility includes determining whether there is good cause not to follow ICWA placement preferences. (25 U.S.C. § 1915(b); Welf. & Inst. Code, § 361.31, subds. (b), (h); BIA Guidelines, 44 Fed.Reg. 67854, 67594–67595, § F.3 (Nov. 26, 1979); *Matter of Adoption of T.R.M.* (Ind. 1988) 525 N.E.2d 298, 313 [statutory deference to tribe's placement preference applies only in the absence of good cause to the contrary].) Thus, while a state court is to give full faith and credit to the official decisions of a child's tribe, those decisions do not necessarily control the state court's determination of the child's placement. (*Matter of Adoption*

---

[9] We note the Tribal Resolution did not address whether Anthony's placement with the H.'s was within reasonable proximity to his home. (25 U.S.C. § 1915(b); Welf. & Inst. Code, § 361.31, subd. (b).)

*of T.R.M., supra,* at p. 306 ["full faith and credit" does not require the state court to give absolute deference to a tribal court order regardless of the circumstances].)

 Further, although we reverse the order placing Anthony in the H.'s home, we are not directing the court to remove Anthony from the H.'s home without assessing "the family's current circumstances and any developments in the dependency proceedings that may have occurred during the pendency of the appeal." (*In re Anna S.* (2010) 180 Cal.App.4th 1489, 1501 [103 Cal.Rptr.3d 889].) "[G]enerally we are reluctant to direct the trial court to make any custodial or placement order without a current assessment of the child's circumstances and needs. [Citation.]" (*Id.* at p. 1502; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 326 [27 Cal.Rptr.2d 595, 867 P.2d 706] [a dependent child has an interest in continuity and stability of placement].) We leave to the sound discretion of the court, keeping in mind that visitation between parent and child is essential to reasonable reunification services, to determine "what procedural steps, and what result, are appropriate at this juncture in light of our reversal, the grounds on which it was based, and the current state of affairs in [Anthony's] family." (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 701 [13 Cal.Rptr.3d 198].)

## DISPOSITION

We reverse the order placing Anthony with the H.'s. In view of our conclusions the child's placement was not in reasonable proximity to his home and did not promote reasonable visitation, the court is instructed not to draw any negative inferences against mother for deficiencies in visitation services, if any. The stay issued by this court on July 13, 2012, is vacated.

Haller, J., and Irion, J., concurred.