Filed 5/9/14  In re E.V. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re E.V. et al., Persons Coming Under the Juvenile Court Law. | |
| SONOMA COUNTY HUMAN SERVICES DEPARTMENT,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>K.C.,<br><br>Defendant and Appellant;<br><br>P.A. et al.,<br><br>Movants and Appellants. | A138505<br><br>(Sonoma County<br>Super. Ct. No. 3897-DEP; 3898-DEP) |

K.C., the mother of E.V., age four, and R.A., age two, appeals from the court's order terminating her parental rights and the order placing them for adoption.  P.A. and G.A., R.A.'s de facto parents, also appeal and join in mother's opening and reply briefs.  Mother contends that the court abused its discretion in ordering an Indian Child Welfare Act (25 U.S.C. § 1901, et seq.) (ICWA) placement for her children.  We affirm.

## I.  FACTUAL BACKGROUND

The children came to the attention of the Sonoma County Human Services Department (the Department) in April 2012 when the de facto parents requested legal guardianship of R.A.  During the guardianship investigation process, the Department

1

discovered that G.A. had a significant child abuse history and that P.A. had been involved in several incidents including assault, domestic violence, battery and public intoxication. The Department also learned that mother had a significant substance abuse problem, was affiliated with a gang, and had failed to reunify with the children's half-sibling. Finally, E.V. had been in the care of the maternal grandmother, who also had a history with the Department.

The Department filed a Welfare and Institutions Code[1] section 300 petition on April 17, 2012 alleging that mother had failed to provide adequate care and supervision for R.A. and E.V. As to R.A., the Department alleged that mother had failed to protect him because he was living with people who had a child abuse and criminal history. Mother had also failed to reunify with the children's half-sibling. As to E.V., the Department alleged that she was living with the maternal grandmother who had a substantial child welfare history with her own children. On April 18, 2012, the court ordered that the children be detained.[2] The children were placed together in an emergency foster home.

The Department's report for the jurisdictional hearing recommended that no reunification services be offered to mother pursuant to section 361.5, subdivision (b)(10) and (11) due to her failure to reunify with the children's half-sibling.[3] The court continued the jurisdictional hearing because the children's counsel had a conflict of interest.

On June 13, 2012, the Department informed the court that R.A.'s father was in custody and was also a tribal member with Dry Creek Rancheria. On June 20, 2012, the court denied the de facto parents' motion for presumed parent status without prejudice.

---

[1] Unless otherwise indicated, all further statutory references are to the Welfare and Institutions Code.

[2] Mother and the maternal grandmother tested positive for methamphetamine on the same day.

[3] The children's alleged fathers had not been located at the time of the jurisdictional hearing.

2

On July 5, 2012, the children were placed with a maternal cousin. On August 9, the court granted the motion of P.A. and G.A. for de facto parent status.

The jurisdiction and disposition hearing was held on August 14 and 21, 2012. On August 21, 2012, the parties announced that they had reached an agreement in the matter. Mother waived reunification services and agreed to execute a voluntary relinquishment of her rights to the children to permit adoption by her maternal cousin. She admitted the allegations of the section 300 petition as to E.V., and as to R.A., she admitted that she had failed to protect R.A. as a result of a substance abuse problem, and that she had failed to reunify with R.A.'s half-sibling. Counsel for E.V.'s alleged father, J.O., informed the court that J.O. is a tribal member and had requested DNA testing. The court ordered DNA testing but declined to find that ICWA applied pending the results of the testing. The de facto parents of R.A. withdrew their request for placement, acquiescing in the placement of R.A. with the maternal counsel. The court set the matter for a section 366.26 hearing for December 13, 2012.

The Department's report for the section 366.26 hearing recommended that parental rights be terminated and that adoption be ordered as the permanent plan. The Department noted that paternity tests had confirmed that J.O. was the father of E.V. and that he was a member of the Dry Creek Rancheria of Pomo Indians (the Tribe). The Tribe had been notified of the dependency proceedings and had indicated its intention to intervene on behalf of E.V. The whereabouts of the alleged father of R.A. were unknown.

The Department further reported that the maternal cousin, who had placement of the children, could no longer commit to adopting them. She opined that the children would be better off away from the extended family due to "too much family drama."

On December 5, 2012, the Tribe filed a resolution with the court confirming E.V.'s eligibility for enrollment with the Tribe and requested intervention in the dependency proceeding.

On December 13, 2013, the Tribe appeared at the scheduled section 366.26 hearing and informed the court that it had identified an approved ICWA placement for

3

E.V., which would also include R.A., in order to maintain the sibling relationship. Mother's counsel urged the court to consider the de facto parents for placement, indicating that the Department had acknowledged that it made an error in assessing the allegations against G.A.[4]  The court continued the matter to allow the parties time to consider the placement issue.

On January 17, 2013, that matter was again before the court for the section 366.26 hearing.  Mother's counsel objected to the placement of her children with the Tribe and argued that they should be placed with the de facto parents.[5]  Counsel for the Tribe informed the court that it had identified a paternal relative placement and that visits between the children and relatives were ongoing.  The Tribe acknowledged that even though it only had jurisdiction over E.V., it believed that it was detrimental to separate the children and it had provided substantial assistance to the paternal relatives to assure the children's needs were met.  The court continued the matter for a settlement conference.

On January 30, 2013, the court denied the de facto parents' section 388 petition, finding that it was not in the children's best interests to be separated and there was not good cause to deviate from the ICWA placement preference.

The contested section 366.26  hearing was held on February 28, 2013.  The Department reported that the Tribe had identified a placement for the children and that they had been transitioned to that home.  Mother acknowledged that she was not in a position to care for her children, but objected to an ICWA placement pending testimony from a qualified ICWA expert witness.

Percy Tejada, testified that he had been the ICWA director for the Tribe for almost seven years.  He reviewed the case and opined that it would be detrimental to separate the

---

[4] On October 1, 2012, the Department acknowledged that G.A.'s name was incorrectly submitted to the Department of Justice (DOJ) and that it had notified DOJ to remove his name from the Child Abuse Central Index.

[5] The de facto parents had filed a section 388 motion requesting that the court order placement that same day.

sibling group. He also noted that the Tribe's customs and traditions were to keep sibling groups together. He further testified that he was familiar with the maternal grandmother in this case and that E.V. would be at risk of physical and emotional harm if returned to her care. Tejada explained that the first order of preference in an IWCA case is with a direct relative, the second is a distant relative or family friend, and the third preference is any Native American that comes forward. There is no preference given to non-Indian families, but the Tribe has jurisdiction to identify a different order of placement by resolution. Tejada conceded that the Tribe had not considered placement of the children with the de facto parents. He opined that the children were at risk of harm if returned to mother because of her long history of substance abuse, which was not being treated, and her acknowledgement that she was not a good parent and that a permanent placement with a relative would be best for her children. While the tribe considers the parents' wishes for placement, it has jurisdiction under ICWA to determine which placement is in the best interests of the children. The court deemed Tejada an expert for purposes of ICWA.

The court found by clear and convincing evidence that the children will be adopted and that termination of parental rights would not be detrimental to them. The court terminated mother's parental rights and those of E.V.'s father and the alleged fathers of R.A. The court further found that there is clear and convincing evidence beyond a reasonable doubt that mother's continued custody would likely cause serious physical or emotional damage to the children and that this finding was supported by the testimony of a qualified expert witness.

Mother and the de facto parents timely appealed.

## II. DISCUSSION

Mother contends that the court erred in finding that the children's placement with the Tribe's recommended preadoptive home was appropriate. In particular, she asserts that the court failed to consider whether the placement was "the least restrictive setting which most approximates a family and in which his [or her] special needs, if any, may be met. The child shall also be placed within reasonable proximity to his or her home,

5

taking into account any special needs of the child . . . ."  (25 U.S.C. § 1915(b); see § 361.31, subd. (b).)  She argues that the court had insufficient information on which to make its finding that the placement satisfied ICWA requirements and was in the children's best interests.

Mother's reliance on the ICWA's preferences in foster care or preadoptive placements is misplaced.[6]  Here, Tejada, the Tribe's ICWA director testified at the hearing on January 17, 2013 that the Tribe had located an adoptive home for the children. The paternal relatives were willing to adopt both E.V. and her non-Indian brother and they had begun visitation.  On January 30, 2013, the Department informed the court that it believed the paternal relatives had passed all the necessary background clearances for placement to occur.  The court found that it was in the bests interest of the children that they not be separated.

By the time of the February 28, 2013 section 366.26 hearing, the Department reported that the children had been transitioned to the adoptive home of the paternal relatives.  Counsel for the children testified that the children were doing well in the placement and were attached to their paternal relatives.  Mother acknowledged that the

---

[6] "In any foster care or preadoptive placement, a preference shall be given, in the absence of good cause to the contrary, to a placement with-- [¶] (i) a member of the Indian child's extended family; [¶] (ii) a foster home licensed, approved, or specified by the Indian child's tribe; [¶] (iii) an Indian foster home licensed or approved by an authorized non-Indian licensing authority; or [¶] (iv) an institution for children approved by an Indian tribe or operated by an Indian organization which has a program suitable to meet the Indian child's needs."  (25 U.S.C. § 1915(b).)  Similarly, section 361.31, subdivision (b) provides identical guidelines for foster care, guardianship placements or emergency removal of Indian children.  These guidelines do not apply to adoption placements which are covered by section 361.31, subdivision (c) and 25 U.S.C. § 1915(a).  Moreover, 25 U.S.C. § 1915(b)'s requirements that a preadoptive placement be in reasonable proximity to home were nonetheless inapplicable in this case where mother waived reunification services in favor of adoption.  (*In re Anthony T.* (2012) 208 Cal.App.4th 1019, 1030 [when primary goal is family reunification, Indian child's placement must by within reasonable proximity to the child's home].)  In any event, we note that the Dry Creek Tribal Offices are located in Santa Rosa.

6

placement with the Tribe family was "the most positive result" because there was a possibility of her involvement with the children in the future.

The ICWA sets forth certain preferences for placement of an Indian child in an adoptive placement: "In any adoptive placement of an Indian child under State law, a preference shall be given, in the absence of good cause to the contrary, to a placement with [¶] (1) a member of the child's extended family; [¶] (2) other members of the Indian child's tribe; or [¶] (3) other Indian families." (25 U.S.C. § 1915(a).) The placement with the paternal relatives met ICWA's adoptive placement preferences because it was with "a member of the child's extended family." (25 U.S.C. § 1915(a).) Mother failed to show that there was good cause not to follow ICWA placement guidelines. (*In re Anthony T., supra,* 208 Cal.App.4th 1019, 1033 ["When the state court retains jurisdiction over an Indian child, this responsibility includes determining whether there is good cause not to follow ICWA placement preferences"].) On this record, the court did not err in ordering the children's placement with the paternal relatives.

Mother also contends that the court erred in finding that R.A.'s placement was appropriate and necessary because the de facto parents were willing to adopt him. The court did not err in the placement. The record establishes not only that it was in the best interests of the children to be placed together, but it showed that the de facto parents would be unable to adopt them. Counsel for the Department testified at the hearing on the de facto parents' section 388 petition that they "would not clear for adoption." No error appears.

### III. DISPOSITION

The orders are affirmed.

                                               _____

                                             Rivera, J.

We concur:

_____
Ruvolo, P.J.

_____
Humes, J.