Filed 6/14/23 In re Ishani S. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re ISHANI S., a Person Coming Under the Juvenile Court Law. | B323573 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. GILBERTO G. Defendant and Appellant. | (Los Angeles County Super. Ct. No. 18CCJP06798C) |

APPEAL from orders of the Superior Court of Los Angeles County, Lisa A. Brackelmanns, Juvenile Court Referee. Conditionally affirmed with directions.

Neale B. Gold, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Senior Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Gilberto G., the incarcerated father of eight-year-old Ishani S., appeals from the juvenile court's jurisdiction findings and disposition orders, challenging the court's findings under Welfare and Institutions Code section 300, subdivisions (b) and (d),[1] that Gilberto's sexual abuse of an 11-year-old girl and his resulting criminal convictions put Ishani at substantial risk of serious physical harm or sexual abuse. Gilberto argues that the judgment in a prior dependency case bars this proceeding under the doctrine of issue preclusion and that substantial evidence did not support the juvenile court's jurisdiction findings based on his criminal convictions. Gilberto also argues the juvenile court erred in denying him family reunification services under section 361.5.

We conclude that, because the juvenile court declared Ishani a dependent child of the court based on both her mother's conduct and on Gilberto's convictions, and because Gilberto has not challenged the jurisdiction findings based on the mother's conduct or shown the additional findings based on his convictions prejudice him, his appeal from the jurisdiction findings is nonjusticiable. We also conclude the court did not err in denying Gilberto reunification services.

Finally, Gilberto contends the Los Angeles County Department of Children and Family Services did not comply with the requirements of the Indian Child Welfare Act (25 U.S.C.

---

[1] Undesignated statutory references are to this code.

2

§ 1901 et seq.) (ICWA) and related California law.  The Department concedes, and we agree, Gilberto is correct.  Therefore, we conditionally affirm the juvenile court's findings and orders and direct the court to ensure the Department complies with ICWA and related California law.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Juvenile Court Sustains a Prior Petition and Terminates Jurisdiction with a Custody and Visitation Order*

In 2016 the juvenile court sustained a petition by the Department under section 300, subdivision (b), alleging there was a substantial risk Ishani would suffer serious physical harm because her mother, Alma, had been arrested for domestic violence in connection with her relationship with Edwin G., her boyfriend at the time.  The juvenile court initially placed Ishani with Gilberto, but eventually ordered Ishani to return to, and reside primarily with, Alma.

The Department later filed a supplemental petition under section 342 alleging Gilberto had sexually abused an 11-year-old girl and was arrested for lewd and lascivious acts with a child under the age of 14 (Pen. Code, § 288, subd. (a)).  The juvenile court sustained the supplemental petition.  The court ultimately terminated its jurisdiction and entered a custody and visitation order granting Alma sole legal and physical custody of Ishani.  When the court terminated its jurisdiction, Gilberto was incarcerated and awaiting trial on the criminal charges.  The custody order granted Gilberto monthly monitored visits with Ishani and semiweekly phone calls.

3

B.      *The Juvenile Court Sustains a New Petition and*
        *Makes Disposition Orders*

In 2020 the Department filed a new petition under section 300, subdivisions (a), (b), and (d).  The Department alleged there was a substantial risk Ishani would suffer serious physical harm because Alma and her new boyfriend, Dandre, had a history of violent altercations in Ishani's presence, Alma "failed to enforce" a criminal protective order she had obtained after Dandre was convicted of inflicting corporal injury on her, and Alma allowed Dandre to live with her and Ishani.  The Department also alleged under section 355.1, subdivision (d), that there was a rebuttable presumption Ishani was a dependent child of the court because Gilberto had (by then) been convicted of committing a lewd and lascivious act on a child under the age of 14 and committing an act of sexual penetration by force upon a child under the age of 14 (Pen. Code, §§ 288, subd. (a), 289, subd. (a)(1)(B)), and because Gilberto was a registered sex offender.

Gilberto filed a motion to dismiss the Department's allegations against him.  He argued issue preclusion barred the Department's new petition because the allegations against him were "identical to those which were already litigated" in the Department's prior petition and there were no new facts or evidence supporting the allegations in the new petition.

At the combined jurisdiction and disposition hearing, the juvenile court denied Gilberto's motion, ruling issue preclusion did not bar the Department's petition because the allegations in the two petitions were not identical—in particular, Gilberto had been convicted of two sex crimes and was a registered sex offender.  The court also ruled Gilberto's prior sexual abuse of a minor continued to place Ishani at risk.  The juvenile court sustained the allegations against Alma and Gilberto, declared

4

Ishani a dependent child of the court, removed her from Alma, and placed her with the Department. The court further ruled Gilberto was not entitled to reunification services under section 361.5, subdivision (e)(1), because he had been sentenced to prison for 20 years (12 years for sexual penetration of a minor, and eight years for lewd and lascivious acts with a minor) and was not eligible for parole until 2031—well past the reunification period authorized under section 361.5—and because the juvenile court had not ordered reunification services for Gilberto in the prior dependency proceeding. Gilberto timely appealed.

**DISCUSSION**

A.  *The Appeal from the Jurisdiction Findings Is Nonjusticiable*

Gilberto contends the juvenile court erred in sustaining the Department's petition under section 300 based on his sexual abuse of a minor and resulting criminal convictions. The Department contends Gilberto's challenge to the court's jurisdiction findings is nonjusticiable because he does not contest the jurisdiction findings based on Alma's conduct.

When a petition under section 300 alleges multiple grounds for jurisdiction, "a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence." (*In re Madison S.* (2017) 15 Cal.App.5th 308, 328-329; see *In re Travis C.* (2017) 13 Cal.App.5th 1219, 1224; *In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) A child is a dependent child of the court "'if the actions of either parent bring [the minor] within one of the statutory definitions of a dependent . . . .'" (*In re Briana V.* (2015) 236 Cal.App.4th 297, 308; see *In re E.E.* (2020) 49 Cal.App.5th

5

195, 212; *In re I.A.* (2011) 201 Cal.App.4th 1484, 1492.)  Therefore, "'an appellate court may decline to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence' or is unchallenged," if the ruling on the remaining findings would have no "practical, tangible impact on the parties' conduct or legal status."  (*In re L.O.* (2021) 67 Cal.App.5th 227, 237; see *Briana V.*, at p. 308; *I.A.*, at p. 1492.)

Here, the juvenile court asserted jurisdiction over Ishani after sustaining the Department's allegations regarding the history of domestic violence between Alma and Dandre and Gilberto's criminal convictions.  Because Gilberto does not challenge the juvenile court's jurisdiction findings based on Alma's conduct, reversing the juvenile court's jurisdiction findings against Gilberto would have no impact on the court's jurisdiction over Ishani.  (See *In re E.E.*, *supra*, 49 Cal.App.5th at p. 212 [because "substantial evidence supports the juvenile court's decision to find the [children] dependents based on mother's conduct," the reviewing court "need not review the evidentiary basis for the sustained allegations against father"]; *In re I.A.*, *supra*, 201 Cal.App.4th. at pp. 1492-1493 [court would not review jurisdiction findings based on the father's conduct because the juvenile court would "still be entitled to assert jurisdiction over the minor on the basis of the unchallenged allegations" regarding the mother's conduct]; *In re J.C.* (2014) 233 Cal.App.4th 1, 3 [court would not review jurisdiction findings based on the father's conduct where the father did not contest the jurisdiction findings based on the mother's conduct and did not explain "any legal or practical consequences that might flow" from the finding against him].)  Therefore, his appeal is nonjusticiable.

6

Gilberto contends we should review the court's jurisdiction findings against him because the juvenile court's decision to deny him reunification services "flowed directly" from those findings. As the Supreme Court recently explained in *In re D.P.* (2023) 14 Cal.5th 266, a court may review a jurisdiction finding where the finding "affects parental custody rights [citation], curtails a parent's contact with his or her child [citation], or 'has resulted in [disposition] orders which continue to adversely affect' a parent." (*Id.* at p. 278; see *In re J.N.* (2021) 62 Cal.App.5th 767, 774 [courts may "reach the merits of a challenge to any jurisdictional finding when, . . . the finding serves as the basis for a dispositional order also challenged on appeal"].)

Gilberto's contention is based on a misunderstanding of the court's order denying him reunification services. The court did not base its order on the jurisdiction findings against Gilberto. In sustaining the petition under section 300, subdivisions (b) and (d), the juvenile court found that there was a substantial risk Ishani would suffer serious physical harm as a result of Gilberto's sexual misconduct, resulting criminal convictions, and status as a sex offender (§ 300, subd. (b)) and that there was a substantial risk she would be sexually abused (§ 300, subd. (d)). In contrast, the juvenile court denied Gilberto reunification services under section 361.5 because Gilberto could not possibly reunify with Ishani within the reunification period—the criminal court had sentenced Gilberto to prison for 20 years, and Gilberto was not eligible for parole for nine years—and because the juvenile court in the prior dependency proceeding had denied Gilberto reunification services. (See § 361.5, subd. (e) ["if the parent or guardian is incarcerated, . . . the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child" based

on, among other factors, "the length of the sentence" and "the likelihood of the parent's discharge from incarceration . . . within the reunification time limitations"].) Indeed, to deny Gilberto reunification services, the court did not need to find there was a substantial risk Ishani would suffer physical harm or sexual abuse because of Gilberto's conduct, and the court did not deny reunification services for that reason. (See *In re S.F.* (2023) ___ Cal.App.5th ___, ___ [2023 WL 3489025, p. 17] ["there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order"]; *In re Briana V., supra*, 236 Cal.App.4th at p. 311 [same]; *In re I.A., supra*, 201 Cal.App.4th at p. 1492 ["[a] jurisdictional finding involving the conduct of a particular parent is not necessary for the court to enter orders binding on that parent, once dependency jurisdiction has been established"].)

Nor has Gilberto shown the jurisdiction findings would prejudice him in future dependency proceedings or have consequences beyond jurisdiction. (See *In re D.P., supra,* 14 Cal.5th at p. 285; *In re D.M.* (2015) 242 Cal.App.4th 634, 639.) The juvenile court in the prior case sustained a petition and declared Ishani a dependent child of the court because of Gilberto's sexual abuse of a minor and has awarded Alma sole legal and physical custody of Ishani. Gilberto does not dispute that he sexually abused a child under the age of 14 or that he was convicted of two sex crimes; he argues only that the Department may not file a new dependency petition based on his prior conduct and convictions. Given that a juvenile court and a criminal court have already determined Gilberto committed acts of sexual abuse, it is unclear how another jurisdiction finding under section 300 could cause Gilberto any (further) prejudice.

8

*In re Madison S., supra*, 15 Cal.App.5th 308 is instructive. There, the mother challenged one of the juvenile court's jurisdiction findings—that her child was at risk of harm because the mother disciplined the child with a spoon and belt—but not the other bases for jurisdiction. The mother, however, did not claim the allegations about her use of a spoon and belt allegations were "untrue" or "unsupported by the evidence." (*Id.* at p. 329.) In declining to review the mother's challenge to the jurisdiction finding, the court explained "[t]he substance of the . . . allegation[s] would almost certainly be available in any future dependency . . . proceeding, regardless of any determination on our part as to whether it formed an independent basis for juvenile court jurisdiction"; thus, the court held, it was "purely an academic question whether such an allegation, standing alone, is sufficient to support dependency jurisdiction . . . ." (*Id.* at p. 330.) Similarly, because there is no dispute Gilberto was convicted on two counts of sexually abusing a minor, the substance of the Department's allegations will be available for the juvenile court to consider when issuing any order in this or future dependency proceedings.

### B. *Substantial Evidence Supported the Trial Court's Order Denying Gilberto Reunification Services*

"Reunification services for incarcerated parents are specifically governed by section 361.5, subdivision (e)(1), which provides, 'the court shall order reasonable services unless the court determines, by clear and convincing evidence, those services would be detrimental to the child.'" (*Fabian L. v. Superior Court* (2013) 214 Cal.App.4th 1018, 1028; see *In re Christopher L.* (2020) 56 Cal.App.5th 1172, 1190.) The

9

statutorily enumerated factors for determining detriment include the "'age of the child, the degree of parent-child bonding, the length of the sentence, . . . the nature of the crime . . . , the degree of detriment to the child if services are not offered . . . , the likelihood of the parent's discharge from incarceration . . . within the reunification time limitations,' and 'any other appropriate factors.'" (*Christopher L.*, at p. 1190; see § 361.5, subd. (e)(1).)

We review an order denying reunification services under section 361.5, subdivision (e), for substantial evidence. (*Fabian L. v. Superior Court*, *supra*, 214 Cal.App.4th at p. 1028; *In re James C.* (2002) 104 Cal.App.4th 470, 484.) "In making this determination, we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders. [Citation.] 'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.'" (*Fabian L.*, at p. 1028; see *James C.*, at p. 484.) In addition, because section 361.5 requires the court to find by clear and convincing evidence that reunification services would be detrimental, we take into account the elevated standard of proof and consider "whether the record as a whole contains substantial evidence from which a reasonable fact finder could have found it highly probable that the fact was true." (*Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1011.)

Substantial evidence supported the juvenile court's finding that providing Gilberto reunification services would be detrimental to Ishani. "The purpose of providing reunification services is to 'eliminate the conditions leading to loss of custody . . . to further[ ] the goal of preservation of family,'" but "'the statutory scheme recognizes that there are cases in which the

10

delay attributable to the provision of reunification services would be more detrimental to the minor than discounting the competing goal of family preservation . . . .'" (*In re I.A.* (2019) 40 Cal.App.5th 19, 23; see *Jennifer S. v. Superior Court (*2017) 15 Cal.App.5th 1113, 1120.)

Reunification services would not have facilitated a reunion between Ishani and Gilberto. Gilberto was serving a 20-year prison sentence, and the juvenile court found Gilberto would not be eligible for parole until 2031, a finding Gilberto does not challenge. That was well past the 12-month reunification period (and the 24-month extended reunification period) authorized by section 361.5. (See § 365.1, subd. (a)(1)(A), (4)(A).) That Gilberto had no chance of reunifying with Ishani for nearly a decade was sufficient for the court to find that providing reunification services would be detrimental to Ishani and would only interfere with and delay her opportunity for stability in a permanent home. (See *Fabian L. v. Superior Court*, *supra*, 214 Cal.App.4th at pp. 1030-1031 ["there are many cases in which the provision of . . . services has little or no likelihood of success and thus only serves to delay stability for the child," and this "is especially true when the parent will be incarcerated longer than the maximum time periods for reunification efforts"]; see, e.g., *In re Christopher L.*, *supra*, 56 Cal.App.5th at p. 1191 [providing reunification services would be detrimental to the child "beyond a reasonable doubt" because the father would not be eligible for parole until three years after the child was detained, and "any services the court might order could not have successfully reunified [the father] with [the child] within the statutory timeframe"]; *In re James C.*, *supra*, 104 Cal.App.4th at pp. 485-486 [substantial evidence supported the juvenile court's order denying

11

reunification services where the father's release date was two years after the child protective agency detained the children]; see also *Edgar O. v. Superior Court* (2000) 84 Cal.App.4th 13, 18 [section 361.5, subdivision (e), "does not require that each listed factor exist in any particular case"].)

In addition, as discussed, the juvenile court may consider the degree of parent-child bonding, the nature of the crime, and the degree of detriment to the child if the court did not provide reunification services. (See § 361.5, subd. (e)(1); *In re Christopher L.*, *supra*, 56 Cal.App.5th at p. 1190.) Gilberto acknowledges his crime was serious. He sexually abused an 11-year-old girl in his home on at least six occasions, including while Ishani was home and under his care. There was no evidence that Gilberto and Ishani had a close bond or that it would be detrimental to Ishani if the court were to deny Gilberto reunification services. According to Alma, Ishani and Gilberto spoke a few times on the phone when Gilberto was first incarcerated, but they eventually stopped talking to each other, Ishani no longer wanted to speak with Gilberto, and Ishani said she did not feel safe with him. Dandre also confirmed that, when Gilberto called, "Ishani was not really interested in talking to [him]." When interviewed by a Department social worker, Ishani referred to Dandre, not Gilberto, as her father, and said she wanted to live with him and Alma. (See *Christopher L.*, at p. 1191 [substantial evidence supported the juvenile court's order denying an incarcerated father reunification services where the father had "no relationship" with the child and had a "violent felony conviction" that kept him from seeing the child]; *In re James C.*, *supra*, 104 Cal.App.4th at p. 485 [substantial evidence supported the juvenile court's order denying an incarcerated

12

father reunification services where there was no evidence the children "had any kind of relationship with him"].)

Gilberto points to other evidence in the record, including that he was not present during the domestic violence incidents between Alma and Dandre that caused the Department to initiate the current dependency proceedings, that he "made plans . . . for his ex-partner to have rights" to Ishani, and that he "continued to ask for phone calls." None of this evidence is particularly relevant to the factors enumerated in section 361.5, subdivision (e)(1), which governs whether providing the parent reunification services would be detrimental to the child. Moreover, the only "evidence" Gilberto made plans for someone to care for Ishani was his attorney's argument at the jurisdiction and disposition hearing. (See *In re Anthony T.* (2012) 208 Cal.App.4th 1019, 1032, fn. 7 ["[u]nsworn statements of counsel are not evidence"]. ) Similarly, while counsel for Gilberto requested that Gilberto continue to have monitored calls with Ishani, Alma stated that Gilberto had not made much of an effort to call Ishani during the past few years while he was incarcerated. (See *Fabian L. v. Superior Court*, *supra*, 214 Cal.App.4th at p. 1028 [in reviewing an order denying reunification services, we "draw all reasonable inferences from the evidence to support the [juvenile court's] findings and orders"].) Regardless of whether Gilberto was responsible for the most recent exercise of the juvenile court's jurisdiction or wanted to have a relationship with Ishani, substantial evidence supported the juvenile court's findings under section 361.5, subdivision (e)(1). (See *In re Tanis H.* (1997) 59 Cal.App.4th 1218, 1227 ["""""the power of the appellate courts begins and ends with a determination as to whether there is any substantial evidence,

13

contradicted or uncontradicted, which will support the conclusion reached by the [juvenile court]"'"'"'".].)

        C.     *Remand Is Required for the Department and the Juvenile Court To Comply with ICWA*

"ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq.) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316), including "'ask[ing] each participant "at the commencement" of a child custody proceeding "whether the participant knows or has reason to know that the child is an Indian child"'" (*In re Robert F.* (2023) 90 Cal.App.5th 492, 500; see 25 C.F.R. § 23.107(a); *In re J.C.* (2022) 77 Cal.App.5th 70, 77). California law "'more broadly imposes on social services agencies and juvenile courts (but not parents) an "affirmative and continuing duty to inquire" whether a child in the dependency proceeding "is or may be an Indian child."'" (*J.C.*, at p. 77; see § 224.2, subd. (a); *In re A.R.* (2022) 77 Cal.App.5th 197, 237.)

"[S]ection 224.2, subdivision (b), requires the child protective agency to ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" (*In re J.C.*, *supra*, 77 Cal.Ap.5th at p. 77; see *In re H.V.* (2022) 75 Cal.App.5th 433, 437; Cal. Rules of Court, rule 5.481(a)(1).) Although this duty is "commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings." (*J.C.*, at

14

p. 77; see *In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 319.) "'[T]he juvenile court [also] "has a responsibility to ascertain that [the child protective agency] has conducted an adequate investigation'" [citation], and must determine whether ICWA applies to the child's proceedings [citation]." (*In re G.H.* (2022) 84 Cal.App.5th 15, 31; see § 224.2, subd. (i)(2); *J.C.*, at p. 78; Cal. Rules of Court, rule 5.481(b)(3).) The court may not "find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence." (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408; see *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

Alma filed a Judicial Council ICWA-020 Parental Notification of Indian Status form before the detention hearing. The form included a list of various statements that may indicate a child has Indian ancestry. Alma checked the box next to the statement, "None of the above apply." Gilberto subsequently filed a substantially similar Judicial Council ICWA-020 form, checking the same none-of-the-above-apply box. At the jurisdiction and disposition hearing, the court entered an order finding that ICWA did not apply.

Gilberto contends, the Department concedes, and we agree the Department did not comply with its duty of inquiry because it did not ask any known extended family members whether Ishani may be an Indian child. (See *In re Rylei S.*, *supra*, 81 Cal.App.5th at p. 319 ["Regardless of a parent's response concerning his or her possible Indian ancestry on the ICWA-020 Parental Notification of Indian Status form, . . . section 224.2, subdivision (b), requires the agency to ask the child, the parents, extended family members and others who have an interest in the

15

child whether the child is, or may be, an Indian child."].)  Those family members include Alma's father, Alma's sisters, Gilberto's parents, and Gilberto's brothers.  The juvenile court also erred in finding ICWA did not apply and in failing to ensure the Department conducted an adequate inquiry.  (See *Rylei S.*, at p. 320.)  Therefore, we direct the juvenile court to ensure the Department conducts a proper inquiry.  (See *id.* at p. 326; *In re J.K.* (2022) 83 Cal.App.5th 498, 507; *In re J.C., supra*, 77 Cal.App.5th at p. 74.)

## DISPOSITION

The juvenile court's orders are conditionally affirmed.  The juvenile court is directed to ensure the Department fully complies with the inquiry and, if necessary, notice provisions of ICWA and related California law, including inquiring about possible Indian ancestry from any extended family members.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

16