Filed 9/11/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PROFESSIONAL ENGINEERS IN CALIFORNIA GOVERNMENT et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> EDMUND G. BROWN, JR., as Governor, etc., et al., <br><br> Defendants and Appellants. | A136338 <br><br> (Alameda County <br> Super. Ct. Nos. RG10494800, <br> RG10530845) |

Defendants Governor Brown, the California Department of Human Resources (formerly known as the Department of Personnel Administration, or DPA) and a number of state officials challenge an order and judgment granting a petition for writ of mandate that invalidated mandatory furloughs of two categories of state employees: (1) unionized rank-and-file employees represented by Professional Engineers in California Government (PECG) and the California Association of Professional Scientists (CAPS) whose furloughs disproportionately reduced their compensation relative to nonunionized employees represented by PECG and CAPS; and (2) PECG and CAPS-represented employees in positions involving hazardous waste remediation and management on military bases.

Defendants contend the trial court erred when it ruled the furloughs of employees working in hazardous waste remediation violated provisions of the Water and Health and Safety Codes and the single subject rule set forth in article IV, section 9 of our state Constitution; that it misconstrued statutory language requiring proportionate reductions in compensation for unionized and nonunionized employees; that it committed evidentiary

1

error; and that mandamus is not available for the monetary relief sought. As we shall explain, the trial court erred when it concluded the furloughs of employees working in hazardous waste remediation violated the single subject rule. In all other respects, however, we affirm the trial court's rulings.

**BACKGROUND**

In 2008 and 2009, then-governor Schwarzenegger issued executive orders requiring the unpaid furloughs of most state employees, including close to 16,000 engineers and scientists represented by PECG and CAPS. Pursuant to those executive orders, employees were subjected to two unpaid furlough days per month from July 1, 2009 to June 30, 2010.

On July 28, 2010, Governor Schwarzenegger issued Executive Order No. S-12-10, directing the furloughing of state employees for three days each month from August 2010 until a "2010-2011 fiscal year budget is in place and the Director of the Department of Finance determines that there is sufficient cash to allow the State to meet its obligations to pay for critical and essential services to protect public health and safety and to meet its payment obligations protected by the California Constitution . . . ." Pursuant to this Executive Order, nonunion employees represented by CAPS and PECG were subject to three-day-per-month furloughs through the end of October 2010. However, union employees represented by CAPS and PECG were subject to the three furlough days per month through March 2011.[1]

On October 8, 2010, the Legislature passed Senate Bill No. 870 (2009-2010 Reg. Sess.) as the budget act for the 2010-2011 fiscal year (the Budget Act) (Stats. 2010, ch. 712, § 3.91). Section 3.91 authorized "reductions in employee compensation achieved through the collective bargaining process or through administrative actions for represented employees *and a proportionate reduction for nonrepresented employees* (utilizing existing authority of the administration to adjust compensation for nonrepresented employees) . . . ." (Italics added.) It further instructed the Director of

---

[1]For clarity, we will refer to the two groups as union and nonunion employees.

2

Finance to make the "necessary reductions to each item of appropriation . . . ." (Stats. 2010, ch. 712, § 3.91.)

Effective November 1, 2010, the Governor issued Executive Order No. S-15-10, applicable to most nonunion state employees, including supervisory and other exempt employees represented by PECG and CAPS. Executive Order No. S-15-10 reduced the nonunion employees' net compensation by imposing a one-day per month personal leave program and extracting a 3 percent increase in employees' monthly contributions to their pension plan. Between Executive Order No. S-15-10 and the three-day-furlough in effect from August through October 2010, nonunionized employees' net compensation for fiscal year 2010-2011 was reduced by a total of 8.5 percent. That reduction mirrored the 8.5 percent total reduction to the net compensation of employees in nine state bargaining units represented by Service Employees International Union (SEIU) approved by the Legislature in the 2010-2011 Budget Act. In contrast, union employees represented by CAPS and PECG were furloughed for three days each month throughout 2010 and into 2011. As a result, they incurred an 8.5 percent reduction in net compensation for the fiscal year after their first furlough day in March 2011 but were nonetheless subjected to two more furlough days before furloughs ended on April 1, 2011.

Following proceedings in the trial, appellate and Supreme Courts which we need not detail here, plaintiffs filed the petitions for writ of mandate we consider in this appeal. This timely appeal is from the trial court's order and judgment in plaintiffs' favor.

## DISCUSSION

### I. The Single Subject Rule

Plaintiffs successfully challenged the furloughs of employees who work in positions related to hazardous substance management and remediation at military bases on the ground that provisions of the Water and Health and Safety Codes prohibit the Controller and Department of Finance from imposing "any . . . personal services limitations" on those positions. (Water Code, § 13177.7, subd. (b); Health & Safety

3

Code, § 25353.5, subd. (b).)[2] Defendants contend the trial court misinterpreted the phrase "personal services limitations" to encompass furloughs, and, further, that it wrongly found that furloughs of employees covered by those statutes violated the California Constitution's single subject rule. Only the second of these contentions has merit.

### A. The Statutory Language Encompasses Furloughs

Defendants' threshold contention, that the provisions of the Water and Health and Safety Codes related to employees performing remediation at military bases are not at issue because furloughs are not "personal service limitations," warrants only brief attention. We note preliminarily that defendants forfeited this issue for appeal by failing to assert it in the trial court. Although they claim to have raised this point, our review of the trial court record, including the specific pages defendants cite for this claim, validates the trial court's observation that they did not. We will nonetheless address it, albeit

---

[2]Section 13177.7, subdivision (b) of the Water Code states: "Neither the Controller nor the Department of Finance may impose any hiring freeze or personal services limitations, including any position reductions, upon any direct or indirect position of the state board that provides oversight and related support of remediation at a military base, including a closed military base, that is funded through an agreement with a state agency or party responsible for paying the state board's costs, or on any direct or indirect position that is funded by a federal grant that does not require a state match funded from the General Fund." Health and Safety Code section 25353.5, subdivision (b), similarly provides that "Neither the Controller nor the Department of Finance may impose any hiring freeze or personal services limitations, including any position reductions, upon any direct or indirect position of the department that provides oversight and related support of remediation and hazardous substance management at a military base, including a closed military base, that is funded through an agreement with a party responsible for paying the department's costs, or on any direct or indirect position that is funded by a federal grant that does not require a state match funded from the General Fund." Both provisions were enacted in 2003 to exempt employees involved in military base clean-up projects from a proposed 10 percent cut to state personnel. (Assem. Bill No. 1700 (2003-2004 Reg. Sess.).) As explained by the Assembly Bill Analyses, the state would be required to return current federal funding, and would lose future federal funding, for military base remediation projects unless these positions were exempted from the across-the-board cuts. (Assem. Floor Analysis of A.B. 1700 (2003-2004 Reg. Sess.), as amended September 2, 2003.)

4

briefly, because it presents a purely legal issue of statutory interpretation that involves a matter of public interest. (See *Sheller v. Superior Court* (2008) 158 Cal.App.4th 1697; *Bayside Timber Co. v. Board of Supervisors* (1971) 20 Cal.App.3d 1, 5)

Defendants say the statutory phrase "personal service limitations" is "undefined and vague," so that "it is not at all clear that the language of the two code sections encompasses furloughs." Not so. "Ordinarily words used in a statute are presumed to be used in accordance with their established legal or technical meaning." (*People v. Carter* (1996) 48 Cal.App.4th 1536, 1539; see also *Wohlgemuth v. Caterpillar Inc.* (2012) 207 Cal.App.4th 1252, 1261 ["The meaning of the words of a statute is determined with reference to the context in which the words are used."].) The term "personal service" has an accepted meaning in the context of budget legislation, and it signifies employee compensation. In the specific context of cutbacks occasioned by our recent series of budget crises, furloughs have explicitly been identified as a method of reducing the "personal service" budgets of various state departments. Thus, the Governor's 2009 veto message regarding the 2009 budget discusses "personal service budget" reductions for the Attorney General, State Controller, Secretary of State, and Department of Education, each of "which reflects the state employee compensation reductions for *furloughs*, overtime reform, and elimination of two state holidays."[3] (Italics added.) (See also *Brown v. Chiang* (2011) 198 Cal.App.4th 1203, 1226 [State Controller's arguments linked furloughs and other cutbacks in budgeted employee compensation to reductions in "departmental personal services budgets"].) We have no reason to conclude the phrase "personal service limitations" as used in Water Code section 13177.7, subdivision (b) and Health and Safety Code section 25353.5, subdivision (b) have any meaning different than

---

[3]At plaintiffs' request, we take judicial notice of excerpts of publications by the California Department of Finance, which summarize the 2008-2009 State Budget and the 2009 Budget Act and include the Governor's veto messages regarding those budgets. (Evid. Code, § 452, subd. (c); see *St. John's Well Child and Family Center v. Schwarzenegger* (2010) 50 Cal.4th 960, 967, fn. 5 [granting judicial notice of various materials relating to 2009 budget legislation, including Governor's veto message]; *Doe v. Saenz* (2006) 140 Cal.App.4th 960, 986 fn. 12 [judicial notice of Governor's veto message].)

"personal service" as used in the context of budget legislation. Defendants' belated and cursory complaint that "it is not at all clear that the language of the two code sections encompasses furloughs" is unpersuasive in light of this background.

### B. The Furloughs Do Not Violate the Single Subject Rule

It is undisputed that the Legislature possesses the general authority to regulate state employee compensation, including through the use of furloughs. (See *Professional Engineers in California Government v. Schwarzenegger* (2010) 50 Cal.4th 989, 1041–1042, 1047–1048 (*Professional Engineers I*).) It is also undisputed that the furloughs ordered by the Governor were lawful only if and to the extent they were approved by the Legislature. (*Id*. at pp. 1041–1042, 1051.) The dispute here, rather, is whether, as defendants contend, the challenged furloughs imposed by executive order were ratified by the budget legislation. The trial court found such ratification invalid as applied to employees covered by Health and Safety Code section 25353.3 and Water Code section 13177.7 ("covered employees") because, as so applied, the budget legislation violated the single subject rule because the effect of the Budget Act was to amend those existing statutory protections on a one-time basis. We disagree.

Article IV, section 9 of the California Constitution provides that "[a] statute shall embrace but one subject, which shall be expressed in its title. If a statute embraces a subject not expressed in its title, only the part not expressed is void." (Cal. Const., art. IV, § 9.) " 'The single-subject rule essentially requires that a statute have only one subject matter and that the subject be clearly expressed in the statute's title. The rule's primary purpose is to prevent 'log-rolling' in the enactment of laws." (*San Joaquin Helicopters v. Department of Forestry* (2003) 110 Cal.App.4th 1549, 1555–1556.) "As our Supreme Court has pointed out, '[i]n times past an abuse has grown up, which consisted in attaching to a bill dealing with one matter of legislation a clause entirely foreign to that subject matter, to the end that, hidden under the cloak of the meritorious legislation, the obnoxious measure might "ride through." Such "riders," as they came to be designated, not infrequently embraced ill-digested and pernicious legislation, relief bills, private appropriation measures, and the like, which would not have carried if the

6

legislative mind had been directed to them.  It was to cure this evil that the constitution made it mandatory that a bill should embrace but one subject-matter, and to meet the case of such a "rider" actually slipping through, declared that any matter foreign to the title of the bill should be held void.' " (*Planned Parenthood Affiliates v. Swoap* (1985) 173 Cal.App.3d 1187, 1196 (*Planned Parenthood*).)

The single subject rule is to be construed deferentially to minimize judicial interference in the activities of the legislative branch.  (*Planned Parenthood, supra,* 173 Cal.App.3d at p. 1196.)  " 'However numerous the provisions of an act may be, if they can be fairly considered as falling within the subject-matter of legislation, or as proper methods for the attainment of the end sought by the act, there is no conflict with the constitutional provision . . . .'  [Citations.]  In other words, the rule 'was not designed as a loophole of escape from, or a means for the destruction of, legitimate legislation.'  [Citation.]  Accordingly, a provision is deemed germane for purposes of the single subject rule if it is 'auxiliary to and promotive of the main purpose of the act or has a necessary and natural connection with that purpose. . . .' " (*Id.* at pp. 1196–1197.)

The purpose of a budget act is "the appropriation of funds for government operations, and it cannot constitutionally be employed to expand a state agency's authority, or to 'substantively amend[] and chang[e] existing statute law.' " (*California Lab. Federation v. Occupational Safety & Health Stds. Bd.* (1992) 5 Cal.App.4th 985, 991 (*California. Lab. Federation*); *Professional Engineers I, supra,* 50 Cal.4th at p. 1049.)  Plaintiffs contend the 2010-2011 budget act's authorization of furloughs of employees in positions performing military base remediation and hazardous substance clean-up substantively amends existing law by directly contradicting the statutory mandates that those positions not be reduced or limited, and therefore violates the single subject rule.  Alternatively, they maintain, the furlough of covered employees violates the single subject rule even if it does not directly contradict the Water and Health and Safety provisions because in effect it amends those statutory protections.  While plaintiffs acknowledge the Legislature possesses the authority to enact furloughs, they assert that in

7

this instance it improperly attempted to do so through substantive statutory amendments "masquerading as Budget Act provisions."

*Professional Engineers I* disposes of their argument. The plaintiffs in that case, various state employee unions, contended that the single subject rule prohibited an interpretation of section 3.90 of the revised 2008 Budget Act as authorizing furloughs because doing so would have the effect of amending Government Code section 19826,[4] the general statute concerning the DPA's authority over state employee salaries. The Court disagreed. "Prior decisions have stated that ' " ' "the budget bill may deal only with the one subject of appropriations to support the annual budget," ' and thus ' "may not constitutionally be used to grant authority to a state agency that the agency does not otherwise possess" ' or to " 'substantively amend[] and chang[e] [e]xisting statute law." ' " ' [Citations.] Section 3.90, however, unlike the budget act provisions at issue in *Planned Parenthood* and a number of other cases [citations], does not substantively amend or change any existing statutory provision or expand or restrict the substantive authority of any state agency, and cannot reasonably be described as a substantive policy change 'masquerading as [a] Budget Act provision[].' " (*Id.* at pp. 1049–1050.)

Critical to the Court's reasoning was its interpretation that the budget act's furlough provision did not "purport to grant the Governor or the DPA authority to impose unpaid furloughs *unilaterally,* but rather embodies the Legislature's determination that the two-day-a-month furlough plan is a permissible means by which the specific reductions set forth in section 3.90 may be implemented. Section 19826 places no limitation upon *the Legislature's authority* to increase or reduce the pay or salaries of

---

[4]Hereinafter section 19826. In relevant part, it provides: "(a) The department shall establish and adjust salary ranges for each class of position in the state civil service subject to any merit limits contained in Article VII of the California Constitution. . . . [¶] (b) Notwithstanding any other provision of law, the department shall not establish, adjust, or recommend a salary range for any employees in an appropriate unit where an employee organization has been chosen as the exclusive representative . . . ." The DPA's authority under section 19826 encompasses adjusting salaries within salary ranges as well as setting maximum and minimum salaries. (*Professional Engineers I, supra*, 50 Cal.4th at p. 1037.)

8

state employees, and section 3.90 simply represents an exercise of the legislature's reserved authority over state-employee compensation. Past budget acts have included similar provisions directing that an increase in appropriations for employee compensation set forth in the budget act be implemented in a particular manner specified by the Legislature, even when the DPA or its predecessor . . . would not have had authority to make those particular salary adjustments itself under the existing statutory provisions [citation], and those budget act provisions never have been viewed as violating the single subject rule." (*Id*. at pp. 1050–1051, fns. omitted.)

So too here. Neither Health and Safety Code section 25353.5, subdivision (b) nor Water Code section 13177.7, subdivision (b) places a limitation on the *Legislature*'s reserved authority to alter state employee compensation. No less so than in *Professional Engineers I,* the Legislature's ratification of the Budget Acts at issue here was a valid exercise of that authority. While it may be true, as plaintiffs say, that the existing Water and Health and Safety Code provisions preclude the Department of Finance from unilaterally imposing the challenged furloughs, the ratification that effected the imposition of those furloughs was an act of the *Legislature*. Such "budget act provisions never have been viewed as violating the single subject rule." (*Professional Engineers I, supra,* 50 Cal.4th at p. 1051.)

The cases on which defendants rely do not support their contrary view. In *Planned Parenthood, supra,* 173 Cal.App.3d at pages 1200–1201, the court held invalid a budget provision purporting to withhold family planning funds from organizations that promoted abortion services because, in limiting the kinds of services family planning agencies could provide, it imposed a "manifest restriction of activities authorized under the Family Planning Act" and imposed "substantive conditions [that] appear nowhere in existing law." (*Id*. at p. 1201.) In *California Lab. Federation, supra,* 5 Cal.App.4th at pages 993–996, the court held a budget act provision that imposed an hourly rate cap on private attorney general fee awards under Code of Civil Procedure section 1021.5 impermissibly amended the fee statute. In each of these cases, the challenged budget provision effectively altered a substantive statutory provision. Here, in contrast, the

9

furlough provisions ratified by the subject Budget Acts were, at their core and in their purpose, fundamentally addressed "only with the one subject of appropriations to support the annual budget." (*Planned Parenthood, supra,* 173 Cal.App.3d at p. 1199.) Like the budget act provision at issue in *Professional Engineers I*, *supra,* they "do[] not substantively amend or change any existing statutory provision or expand or restrict the substantive authority of any state agency, and cannot reasonably be described as a substantive policy change 'masquerading as [a] Budget Act provision[].' " (*Professional Engineers I,* 50 Cal.4th at pp. 1049–1050 [distinguishing *Planned Parenthood, supra,* 173 Cal.App.3d 1187, and *California Labor Federation, supra,* 5 Cal.App.4th 985].)

*California Attorneys, etc. v. Brown* (2011) 195 Cal.App.4th 119, is also inapposite. Although we held there that furloughs of State Compensation Insurance Fund (State Fund) employees were unauthorized, our conclusion rested on the State Fund's unique status as a quasi-governmental entity, its unique funding source, and the statutory language that " '[n]otwithstanding any provision of the Government Code or any other provision of law, the positions funded by the State Compensation Insurance Fund are exempt from any hiring freezes and staff cutbacks otherwise required by law.' " (*Id*. at pp. 125–126; see Ins. Code, § 11873, subd.(c).) Those factors are not present here.

We know of no case that holds that the reduction of an item of appropriation and its means of implementation in the Budget Act without more violates the single subject rule. The cases, like *Planned Parenthood,* that hold the Legislature can violate the single subject rule in enacting a budget, turn on some provision in the legislation demonstrating a legislative desire to change public policy apart from enacting a budget. The record here contains no indication that the Legislature was doing anything more in enacting the Budget Act than reducing the appropriations for personal services and implementing the reduction. Unlike the interplay between the Budget Act and the Family Planning Act in *Planned Parenthood*, the Budget Act here betrays no intention or desire on the part of the Legislature to restrict or substantively modify hazardous waste remediation programs. There was no violation of the single subject rule.

10

We therefore conclude the challenged furloughs of employees working in hazardous waste remediation did not violate the single subject rule. In that respect, the trial court's order must be reversed.

## II. "Proportionate" Reductions for Union and Nonunion Employees

### A. Proportionate Means Proportionate

Section 3.91 of the Budget Act provides that "each item of appropriation in this act," with certain exceptions not applicable here, "shall be reduced . . . to reflect reduction in employee compensation achieved through the collective bargaining process or through administrative actions for represented employees *and a proportionate reduction for nonrepresented employees . . . .*" (Stats. 2010, ch. 712, § 3.91, italics added.) It is undisputed that nonunion employees' compensation was cut by 8.5 percent in fiscal year 2010-2011 as a result of the furloughs, while the rank-and-file union employees were subjected to two additional furlough days that resulted in a 9.2 percent pay cut for the fiscal year. The trial court observed that " 'proportionate' means 'having the same or constant ratio,' which is synonymous with the same percentage." Accordingly, it ruled that the disparity between represented and nonrepresented employees violated the requirement that the reductions in compensation be proportionate. Defendants contend this was erroneous because the Legislature simply meant that the reductions for the two categories of employees should be "similar." In short, they seek to redefine "proportionate" to mean "similar," or " 'having a resemblance in appearance, character, or quantity, without being identical.' " (Italics omitted.)

We cannot indulge such a disregard of the statutory language. The Supreme Court has cautioned on numerous occasions that " 'the judicial role in a democratic society is fundamentally to interpret laws, not to write them. The latter power belongs primarily to the people and the political branches of government . . . .' [Citation.] It cannot be too often repeated that due respect for the political branches of our government requires us to interpret the laws in accordance with the expressed intention of the Legislature. 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' " (*California Teachers Assn. v. Governing Bd. of Rialto Unified*

11

*School Dist.* (1997) 14 Cal.4th 627, 632–633 (*Cal. Teachers*).) This bedrock principle bars us from substituting "similar" for "proportionate," a word that has a precise and specific meaning. (See, e.g., Merriam-Webster's Collegiate Dictionary (10th 3d. 2001) p. 933 [1a: corresponding in size, degree, or intensity b: having the same or a constant ratio"]; *Cal. Teachers, supra,* at p. 633 [" 'Our first step [in determining the Legislature's intent] is to scrutinize the actual words of the statute, giving them a plain and commonsense meaning.' "].) " 'If the [statutory] language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' " (*Ailanto Properties, Inc. v. City of Half Moon Bay* (2006) 142 Cal.App.4th 572, 582.) No such absurdity would result here. Defendants do not claim it was impossible or impracticable to determine when the furloughs would exact cuts from union employees' pay that would draw them even with the 8.5 percent reduction imposed on their nonunion counterparts. To the contrary, the fact that Executive Order No. S-15-10 reduced the nonunion employees' compensation for the fiscal year by the same 8.5 percent imposed on SEIU-represented employees through the Budget Act reflects that such determinations can be, and have been, made.

Defendants nonetheless argue that the legislative history supports reading the term "proportionate" as synonymous with "similar." They rest this argument primarily on a floor comment by bill author Senator Ducheny that "[t]he savings on employee compensation recognized through this budget, recognizes those contracts *and assumes similar savings* for other units and non-represented employees . . . ." (Italics added.) But even if this comment carried the meaning defendants ascribe to it, which is not at all apparent, we need not resort to the legislative history. "When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history." (*National Technical Systems v. Commercial Contractors, Inc.* (2001) 89 Cal.App.4th 1000, 1008; *California Fed. Savings & Loan Assn. v. City of Los Angeles* (1995) 11 Cal.4th 342, 349.) And in any event, a legislator's personal understanding of a bill generally "does not indicate the Legislature's

12

collective intent" in enacting it. (*Carter v. California Dept. of Veterans Affairs* (2006) 38 Cal.4th 914, 929.)

Defendants argue that, even accepting the English meaning of "proportionate," the trial court erred in "imposing a standard of absolute mathematical equivalency." What this means, presumably, is that "proportionate" in fact means "almost proportionate," "more or less proportionate," or perhaps "good enough for government work." But that is not what the Budget Act mandates. The success of defendants' argument rests on persuading us that the Legislature intended the word it chose to mean something other than its established meaning. The trial court properly rejected that argument, as do we.

Nevertheless, there is a conceptual obstacle that would seem to counsel against affording the plaintiffs the relief they seek. At this late date, most of the affected represented employees have likely long since used the excess furlough days given them in lieu of wages. So, affording them relief in the nature of mandamus that directs the defendants to "[s]et aside as unlawful the second and third unpaid furlough days in March 2011, . . . and take any and all actions required by law to make those employees whole by providing backpay . . . ." may do more than make those employees whole. To the extent the furloughs have been taken, the represented employees did not work and the relief afforded them at this late date pays them for those days. Notwithstanding this anomaly, and the effect it may have on a proportionate reduction of salaries, we affirm this aspect of the relief ordered by the trial court.

The dilemma is created in part by the untimeliness of the superior court's order granting final relief. As is often the case, events in this litigation could not keep pace with the real world implementation of the pay reductions and furloughs. But this lag is not the fault of the represented employees. They filed this action in January 2010, and secured interim relief that August prohibiting the furloughs from taking effect, only to have it stayed by our Supreme Court pending its consideration of *Professional Engineers I, supra,* 50 Cal.4th 989. Following the high court's decision in *Professional Engineers I,* in December 2010, we vacated the temporary restraining order and remanded this case to the superior court for further proceedings. Since then, the furloughs have been

13

implemented.  Most employees likely took their furlough days.  Some likely did not.
Others probably worked extra hours to fulfill their responsibilities even though they took
their furlough days.  In these circumstances, while the relief granted by the trial court
may appear to afford a disproportionate pecuniary advantage by paying employees who
were furloughed, it is debatable, and we do not decide, whether the furlough days were
adequate and equivalent compensation for reduced wages.

B.  The Trial Court Properly Considered the Toppin Declarations

Defendants maintain the court abused its discretion when it considered a
supplemental declaration from Theodore Toppin submitted with plaintiffs' reply brief and
then overruled defendants' objections to Mr. Toppin's original declaration.  Specifically,
defendants argue that statements in the first declaration were conclusory and lacked
foundation, while the supplemental declaration, which remedied the defects in the
original, was untimely.  But the trial court is vested with broad discretion in ruling on the
admissibility of evidence, and its ruling will be upset only upon a clear showing that it
exceeded the bounds of reason.  (*Tudor Ranches, Inc. v. State Comp. Ins. Fund* (1998) 65
Cal.App.4th 1422, 1431.)  Defendants have not made that showing.

The original Toppin declaration documented reductions to the compensation of
union and nonunion employees in Fiscal Year 2010-2011 and provided the respective
percentages by which their compensation was reduced during that period.  After
defendants objected that Toppin's figures were conclusory and lacked foundation,
plaintiffs submitted his supplemental declaration that explained in detail the mathematical
computations he had undertaken to calculate the various percentages.

Defendants did not dispute the validity of Mr. Toppin's method or conclusions in
the trial court, and they do not do so here.  They argue, rather, that the late submission of
the supplemental declaration prevented them from providing a meaningful response.
What that response might have been or how defendants could have been prejudiced by
the timing they do not say, but no matter.  Mr. Toppin's supplemental declaration did
nothing more than elaborate upon the steps he had taken to calculate the figures provided
in his original declaration.  In contrast to the authorities defendants cite (see *Feitelberg v.*

14

*Credit Suisse First Boston, LLC* (2005) 134 Cal.App.4th 997, 1022 [courts generally will not consider issues first raised in reply brief]; *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316 [on summary judgment, consideration of evidence omitted from separate statement violated opponent's due process rights]), the supplemental declaration raised no new theories or arguments. It was well within the court's discretion to consider it.

### III.  Mandamus Relief Was Appropriate

Defendants contend that a writ of mandamus was an unavailable form of relief because plaintiffs had a remedy at law for back wages. They are mistaken.

**"**Generally a claim for money damages, including salary, is remediable at law. Therefore, the courts usually refuse to issue a writ of mandamus to compel performance of purely contractual obligations. [Citation.]  Nonetheless, an exception to this rule has developed where the obligation to pay such money rests upon a governing board and depends upon the interpretation of a statute or ordinance." (*California Teachers' Assn. v. Governing Board* (1983) 145 Cal.App.3d 735, 747.)  Quoting *Tevis v. City & County of San Francisco* (1954) 43 Cal.2d 190, 198 (*Tevis*), *California Teachers' Assn. v. Governing Board* explains that " '[i]n a few situations involving claims by state or municipal employees for wages the general rule has been relaxed.  For the most part, these cases concern disputes as to the proper construction of a statute or ordinance defining or giving rise to the exercise of official duty, and, although recognizing that the ultimate effect of a decision may be to adjudicate a money claim, they emphasize the necessity of official cooperation and the ministerial nature of the official acts involved. [Citations.]' (*Ibid.*)  See also *Coan v. State of California* (1974) 11 Cal.3d 286, 291 [(*Coan*)] in which the court stated: 'Although a claim for payment of salary is in effect a money claim, mandamus is a proper remedy where the dispute concerns the proper construction of a statute or ordinance giving rise to the official duty to pay the salary claim.' " (*California Teachers Assn. v. Governing Board, supra,* 145 Cal.App.3d at 747–748; *Coan, supra,* 11 Cal.3d at p. 291; see also *California School Employees Ass'n v. Torrance Unified School Dist.* (2010) 182 Cal.App.4th 1040, 1042, 1044 [writ of

15

mandate appropriate to compel payment of back wages because the dispute concerned the construction of a statute from which arose the alleged duty to pay wages].)

This is such a case. Defendants assert the exception applies only if the disputed enactments "create the very duty to pay the salary claim which is before the court" such that they "create the clear and present ministerial duty that is one of the *prima facie* elements for obtaining the requested relief." Because the legislation at issue here instead concerned furloughs and possibly statutory protections from furloughs, they argue, mandamus relief was therefore unavailable. We disagree. Nothing in the case law supports defendants' narrow construction of the exception. Defendants rely on *Tevis* but the language they cite says merely that "[*f*]*or the most part*, these cases concern disputes as to the proper construction of a statute or ordinance defining or giving rise to the exercise of official duty." (43 Cal.2d at p. 198.) This language is descriptive, not exclusive or exhaustive. More to the point, the legislation concerned here does indeed "define" the scope of the official duty at issue, by prescribing both the furloughs and the limits on their imposition. To the extent the subject enactments may also be said to define an official duty to *reduce* wages or to protect certain positions from such reductions, these are but two sides of the same coin. The trial court correctly ruled that a petition for writ of mandate was an acceptable procedural mechanism for deciding plaintiffs' claims.

## DISPOSITION

The judgment is reversed to the extent it invalidates the furloughs of state employees in positions covered by Water Code section 13177.7, subdivision (b) and Health and Safety Code section 25353.5, subdivision (b). The judgment is affirmed in all other respects. The parties are to bear their own costs on appeal.

_____
Siggins, J.

I concur:

_____
Jenkins, J.

16

POLLAK, J., Concurring and Dissenting.

I agree with the majority that furloughs are "personal service limitations" within the meaning of the Water and Health and Safety Codes and that the furlough provisions of the Budget Act of 2010 (the Budget Act) (Stats. 2010, ch. 712, § 3.91) do not violate the single-subject requirement of article IV, section 9 of the California Constitution. I also agree with the majority's interpretation of the word "proportionate" as used in section 3.91 of the Budget Act.[1] However, I disagree that this section requires the "invalidation" of furloughs that have already been taken or that it requires the state to pay compensation to represented employees for furloughs that were taken because other, nonrepresented, employees were not required to take equivalent furloughs as contemplated in the Budget Act.

Although there is no merit to the interpretation that the Attorney General places on the word "proportionate," there are other problems with the plaintiffs' contention. Initially, section 3.91 of the Budget Act provides that the compensation of nonrepresented employees shall be reduced proportionately to the compensation of represented employees; it does not provide that the compensation of represented employees shall be increased (or that the reduction in their compensation shall be decreased) proportionately to the compensation of nonrepresented employees. Under section 3.91, the nonrepresented employees should have been required to take additional furlough days, but they were not. It is doubtful that the appropriate remedy for this failure under any circumstances would be to reduce the furlough days imposed on represented employees, rather than to compel imposition of the additional furlough days on the nonrepresented employees. Whether or not prospective relief prohibiting imposition of the additional furlough days on the represented employees should have been permitted to stand, it is not possible to undo what has already occurred. At this late date, most of the affected represented employees undoubtedly have used the excess

---

[1] I also have no disagreement with consideration of the Theodore Toppin declarations or of the availability of mandamus relief, were the plaintiffs entitled to such relief on the merits.

1

furlough days given them in lieu of wages.  The nonrepresented employees did work on what should have been the additional furlough days and were appropriately paid for those work days.  At this late date, it is not possible to set aside furlough days that the represented employees have already taken, and there is no justification for compensating them for days that they did not work.  The furloughs were lawfully imposed on these employees; the only deficiency was the failure to impose like furloughs on other employees.  (Moreover, such relief is "disproportionate" and inequitable with respect to the nonrepresented employees, who did work on the days that the represented employees did not.)  Thus, in my view, the order directing defendants to "set aside as unlawful the second and third unpaid furlough days in March 2011 . . . and take any and all actions required by law to make those employees whole by providing backpay" should be vacated.

_____

Pollak, Acting P.J.

A136338

2

| | |
|---|---|
| Trial Court: | Alameda County Superior Court |
| Trial Judge: | Honorable Steven A. Brick |
| Counsel for Defendants and Appellants: | David W. Tyra<br>Kristianne T. Seargeant<br>Meredith Packer Garey<br>KRONICK, MOSKOVITZ,<br>TIEDEMANN & GIRARD<br><br>Joan A. Markoff<br>Will M. Yamada<br>CALIFORNIA DEPARTMENT OF<br>HUMAN RESOURCES |
| Counsel for Plaintiffs and Respondents: | Barbara J. Chisolm<br>Peder Thoreen<br>ALTSHULER BERZON LLP<br><br>James Gerald |

3