Filed 11/29/17; Certified for Publication 12/20/17 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law. | D072226 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ2481C) |
| v. | |
| T.C., | |
| Defendant and Appellant. | |


APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge. Affirmed.


Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant, T.C.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Kristen M. Ojeil, Senior Deputy County Counsel, for Plaintiff and Respondent.

Neil R. Trop, under appointment by the Court of Appeal, for Minor.

T.C. appeals the juvenile court's dispositional order placing her minor daughter, A.F., in the care of her paternal grandmother, Donna F. T.C. contends the court erred by failing to comply with the placement preferences required under the Indian Child Welfare Act (ICWA) (25 U.S.C. § 1901 et seq.) and asserts that the juvenile court should have continued A.F.'s placement with T.C.'s maternal cousin. We agree with the Agency that the juvenile court's dispositional order complied with the applicable placement preferences and affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

At the time of the events leading to A.F.'s dependency, four-month-old A.F. was living with her father, W.F., in a motor home on Donna's property. W.F.'s girlfriend, Lillie B., and her 18-month-old daughter, Leah B., also were staying in the motor home. At noon on Monday, December 5, 2016, Lillie called 911 when she could not wake Leah. The paramedics arrived and immediately started CPR. The paramedics could not revive Leah and shortly after their arrival pronounced her dead. First responders suspected foul play, and the homicide investigators called to the scene reported Leah had multiple injuries on her body, including a broken arm, bruising on her legs, cuts on her face and head, and a burn on one of her feet. Lillie told San Diego Health and Human Services

2

Agency (Agency) social workers at the scene that Leah had been in W.F.'s care since Saturday and that all of the injuries had occurred while Leah was with W.F.

Agency social workers also interviewed W.F. W.F. stated that he had been living in the motor home outside his mother's house with A.F. for a few months. Lillie and W.F. had been dating for several months, and Lillie and Leah occasionally stayed with W.F. in the motor home. W.F. reported that he was A.F.'s primary caretaker and that A.F. was a member of the Campo Band of Mission Indians (Tribe).[1] W.F. told social workers that T.C. used methamphetamine regularly. W.F. denied any involvement in Leah's death, and told the social worker that the child frequently fell and injured herself and was nicknamed "Bumps." He said he and A.F. had fallen asleep in Donna's house the night before and he had checked on Lillie and Leah around 10:00 p.m. W.F. was awoken at 6:00 a.m. by Lillie's angry text messages that he had not slept in the motor home with her. He also said he had checked on Lillie and Leah several times throughout the morning by peaking his head inside the motor home.

Over W.F.'s objections, the Agency's social workers took A.F. into protective custody and placed her at Polinsky Children's Center. T.C. was interviewed by the Agency's social workers later that day and stated that she had left A.F. in W.F.'s care months earlier and had not seen A.F. since October 19, 2016. T.C. confirmed A.F. was an enrolled member of the Tribe. T.C. had a history of involvement with the Agency and had two older children removed from her care as a result of substance abuse. T.C. did

---

[1] W.F. reported that he had Native American ancestry through the Seminole Tribe, but that he was not a registered member.

have custody of A.F.'s two-year-old half brother.  T.C. was resistant to allowing the Agency to inspect her home and also refused to drug test.

On December 8, 2016, the Agency filed a petition under Welfare and Institute Code section 300, subdivision (f)[2] on behalf of A.F.  W.F. was arrested the following day and charged with the first degree murder of Leah.  The juvenile court conducted a detention hearing on December 12, 2016, and ordered A.F. detained in out-of-home care, and ordered liberal, supervised visitation for T.C.  Counsel for the Agency reported that the Tribe was working on finding a placement for A.F.  The following day, W.F. appeared before the juvenile court and the court elevated him to a presumed father, ordered visitation for W.F. and, at W.F.'s request, ordered that Donna be evaluated for placement of A.F.  At both the December 12 and 13 hearings, the court found ICWA applied.

For her part, Donna contacted the Agency almost immediately after A.F. was taken into protective custody.  She told the Agency's social workers she had been involved in A.F.'s care since her birth and requested A.F. be placed with her.  Donna was also concerned about T.C.'s ability to care for A.F.  W.F. also told social workers that he wanted A.F. placed with Donna, and did not want his child to live on the reservation with T.C.  In advance of the jurisdiction and disposition hearing, the Tribe's expert and social worker recommended that A.F. not be placed with either parent and remain a dependent of the juvenile court.  By the time of the first jurisdiction and disposition hearing on

---

[2]      Undesignated statutory references are to the Welfare and Institutions Code.

4

January 4, 2017, A.F. was placed with a maternal cousin, Liesha D., on the Tribe's reservation.

In its report for the jurisdiction and disposition hearing, the Agency recommended the court (1) take jurisdiction over A.F., (2) continue A.F.'s placement with Liesha, (3) provide reunification services to T.C., and (4) deny services to W.F. under section 361.5, subdivision (b)(4). At the January 4, 2017 hearing, both parents contested the Agency's recommendations. The court set a settlement conference for January 23, 2017, and a contested hearing for February 9, 2017. W.F.'s counsel also requested that Donna, who attended the hearing, be provided with visitation. W.F.'s counsel asserted that the Agency had unreasonably delayed in approving visitation with Donna and also noted Donna had requested her home be evaluated by the Agency for placement. The court ordered the Agency to provide reasonable supervised visitation for Donna.

On January 20, 2017, the Tribe notified the Agency it was exercising its right to intervene in the proceeding and that it recommended A.F. continue in her placement with Liesha. In its report for the settlement conference, the Agency maintained its earlier recommendations and reported that T.C. was sporadically engaging in services, but still refused to drug test. At the settlement conference, W.F.'s counsel asserted the Agency had provided only one, one-hour supervised visit for Donna and was unreasonably delaying additional visitation. The Agency responded that it had acted reasonably with respect to visitation for Donna and that supervised visitation was appropriate given the seriousness of the circumstances of the case. The court ordered the Agency to provide Donna with a minimum of two supervised visits each month.

5

At the date set for the contested hearing, the matter was continued. Thereafter, T.C. engaged in services regularly and tested negative for drugs in early February. Donna visited with A.F. on February 24, 2017, and after a team decision meeting on March 8, 2017, the Agency approved overnight weekend visits for Donna. The following day, Donna filed a relative information form notifying the juvenile court that she had retained counsel and would be requesting placement of A.F. In the form, Donna also indicated she was concerned about Liesha's ability to care for A.F. because A.F. had "a severe diaper rash" for "nearly two months." The form attached copies of her communications with the Agency about the rash and photographs showing the severity of the rash and the rash worsening from mid- to late-February.

An additional settlement conference occurred on March 9, 2017, the same day that Donna filed the relative information form. Donna was present at the conference and was represented by counsel. The court acknowledged receipt of Donna's relative information form and questioned the Agency's counsel about A.F.'s diaper rash. The Agency's counsel reported that Liesha had been diligent in having A.F. treated by a doctor and that the rash was healing. Donna's counsel asserted Donna had standing to request placement of A.F. under *In re Isabella G.* (2016) 246 Cal.App.4th 708 (*Isabella G.*), and requested that the court consider the issue of placement with Donna under section 361.3 either at the upcoming disposition hearing or set a special hearing to consider placement. Donna's counsel also requested copies of the court files in the case. Counsel for A.F., T.C. and the Agency objected to the request and asserted Donna did not have standing in the case to contest the Agency's recommended disposition. The court agreed Donna did not have

6

standing, but reiterated a prior order that the Agency had discretion to move A.F. to Donna's home with notice to the minor's counsel. The court also directed the Agency to notify all parties of its final recommendation for relative placement at disposition.

On March 16, 2017, the Agency notified the parties that it was maintaining its recommendation that A.F. remain in Liesha's care. On March 27, 2017, Donna filed a de facto parent request, a request for the court to review the Agency's placement decision, and a request to change a court order under section 388. In a declaration attached to the documents, Donna described her involvement in the case from its inception, her commitment to A.F. since her birth, and her concern that Liesha could not adequately care for the minor. In a separate memorandum of points and authorities, Donna's counsel asserted Donna had standing to address the issue of placement, that placement with Donna was required under section 361.3, and that placement with Donna would comply with ICWA.

The Agency's final report in advance of the contested jurisdiction and disposition hearing outlined the basis for its recommendation under section 361.3 that A.F. remain in her current placement with Liesha. The Agency's social worker explained that the primary basis for its recommendation was that by that time A.F. had been in Liesha's care almost as long as she had been in W.F.'s care and there was no overriding reason to change the placement. Further, there was tension between Donna and T.C., and the Agency was concerned that Donna would not facilitate T.C.'s reunification with A.F.

In a letter to the court dated March 29, 2017, the Tribe's social worker also expressed the Tribe's preference for continuing A.F.'s placement with Liesha. The letter

7

stated that the social worker "in compliance with the regulations of the Indian Child Welfare Act of 1975, conducted an assessment" of Liesha's home and "[a]s a result of the completed assessment, and per the Indian child's Tribal custom, the family and home have been approved and are hereby preferred by the Campo Kumeyaay Nation for placement of [A.F.] as an extended family member and caregiver."

At the hearing on March 30, 2017, the court bifurcated the jurisdictional and dispositional issues. After receiving the Agency's reports, the Tribe's letter, and Donna's declaration into evidence, the court made a jurisdictional finding that A.F. was a child described by section 300, subdivision (f). The court then heard testimony of the Agency's social worker and Donna. The social worker addressed the diaper rash that caused Donna's concern, explaining that Liesha had taken A.F. to the Tribe's health clinic six times and had been diligent in caring for A.F.[3] The social worker reported that the rash had finally cleared and stated that she had no concerns about Liesha's ability to care for A.F.

The Agency's social worker testified that she had spoken with Donna many times and that Donna was always polite and had consistently sought placement of A.F. since the beginning of the proceedings. The social worker did not have any concerns about Donna's ability to care for A.F. She did not believe A.F. would suffer any detriment if she were placed in Donna's home and felt Donna would be protective of A.F. The social worker, however, was concerned that Donna would not facilitate visitation with T.C.

---

[3]    The social worker conceded that two of the health clinic visits were made at the Agency's urging.

8

because they had a contentious relationship, but stated she believed Donna would follow the court's orders. The social worker testified that the Agency did not evaluate Donna's home for placement at the inception of the case because the alleged crime that precipitated A.F.'s removal had occurred on Donna's property.

Donna testified about her strong desire to have A.F. placed in her home and her efforts to obtain placement. Donna stated she would support T.C.'s efforts to reunify with A.F. and facilitate visitation with T.C. so long as she remained sober. Donna also stated she would make sure A.F. maintained her relationship to the Tribe.

After closing arguments by counsel, the juvenile court expressed some confusion as to the application of sections 361.3 and 361.31 and noted there was no "bright line rule" to be applied in determining placement between Liesha and Donna. The court concluded it did not need to make a good cause finding to place A.F. with Donna and stated that under section 361.3, the two caregivers were "pretty much equal." After stating it found Donna's commitment to A.F. and to T.C.'s reunification efforts credible, and also noting its concern that A.F. suffered with a diaper rash for an excessive period of time in Liesha's care, the court found it would not be detrimental to remove A.F. from Liesha and, "because a good cause finding does not have to be made, that the paternal grandmother should get a preferential placement consideration." The juvenile court went on, "if I am wrong and I need to weigh both relatives equally, I would still find the placement with the paternal grandmother at this point would be beneficial . . . ."

DISCUSSION

T.C. argues the juvenile court's placement order was made in error because the court failed to apply section 361.31 and its federal counterpart, section 1915 of title 25 of the United States Code, to its decision, and instead applied section 361.3. T.C. further asserts that the court failed to make the good cause finding required under section 361.31 to deviate from the Tribe's preferred placement with Liesha. In response to T.C.'s arguments, the Agency appears to concede the court was required to follow the placement preference set forth in section 361.31 without regard to any additional preferences specified in section 361.3. It argues, however, there is no reversible error because the court's placement order complied with that provision.[4] A.F.'s appellate counsel also supports affirmance of the juvenile court's order, asserting the court complied with ICWA and that it would not be in A.F.'s best interest to disrupt her placement with Donna at this stage of the proceedings.

_____

[4] Section 361.31 provides with respect to Indian children that a placement with an extended family member is to be preferred over all other placements, but expresses no preference for particular relatives over others. (§ 361.31, subd. (b)(1).) Section 361.3, applicable to children generally, mandates that certain relatives ("grandparent, aunt, uncle or sibling") receive "preferential consideration" for placement over other relatives by being the "first placement to be considered and investigated" by the social services agency. (§ 361.3, subd. (c).) This raises an interesting question whether section 361.3 requires the Agency and juvenile court to give preference to a particular type of relative (like a grandparent) over someone (like a cousin) who is a relative under the ICWA statutes but not a grandparent, aunt, uncle or sibling. Alternatively, do the ICWA provisions preempt any application of the preference contained in section 361.3, thus requiring that with respect to Indian children all categories of relatives be treated equally. Although no published decision appears to have reached this issue, we decline to do so here by expressly accepting the Agency's apparent concession because it is unnecessary to our decision. Even if section 361.3 has no application in the ICWA context, the court here specifically found that placement with Donna was the better alternative.

" 'The United States Congress enacted ICWA to respond to a crisis in which large numbers of Indian children were being removed from their families for placement in non-Indian homes. (*Mississippi Choctaw Indian Band v. Holyfield* (1989) 490 U.S. 30, 32.) ICWA was designed to protect the best interests of Indian children and promote the stability and security of Indian tribes and families by establishing minimum federal standards for the removal of Indian children from their families by state courts and the placement of such children in foster or adoptive homes. (25 U.S.C. § 1902; *In re Kahlen W.* (1991) 233 Cal.App.3d 1414, 1421.)' " (*In re Anthony T.* (2012) 208 Cal.App.4th 1019, 1027 (*Anthony T.*).)

"To meet its goal to place children in foster or adoptive homes which reflect the unique values of Indian culture, ICWA establishes placement preferences for Indian children who have been removed from their families. (25 U.S.C. §§ 1902, 1915(b); § 361.31.) An Indian child in foster care must be placed in 'the least restrictive setting which most approximates a family . . . within reasonable proximity to his or her home, taking into account any special needs of the child.' (25 U.S.C. § 1915(b); § 361.31, subd. (b).)" (*Anthony T., supra*, 208 Cal.App.4th at p. 1027.) Section 361.31, subdivision (b), adheres closely to the federal provision and sets forth the specific order of placement preference the juvenile court must follow for an Indian child. Under both section 361.31, subdivision (b), and section 1915(b) of title 25 of the United States Code, "[i]n the absence of good cause to the contrary, the preferred placement . . . is with a member of the child's extended family; a foster home approved by the Indian child's tribe; an Indian

11

foster home; or an institution for children approved by an Indian tribe or operated by an

Indian organization.  (§ 361.31, subds. (b).)"[5]  (*Anthony T., supra,* at p. 1027.)

Section 1903 of title 25 of the United States Code states that the term "extended

family member" is "defined by the law or custom of the Indian child's tribe or, in the

absence of such law or custom, shall be a person who has reached the age of eighteen and

who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or

[5]    Section 361.3 is the general statute governing a relative request for placement of dependent minors.  The statute, discussed further in section III, " 'gives "preferential consideration" to a relative request for placement, which means "that the relative seeking placement shall be the first placement to be considered and investigated."  (§ 361.3, subd. (c)(1).)' "  (*Isabella G., supra,* 246 Cal.App.4th at p. 719.)  Under section 361.3, the "Agency is *required* to assess those relatives seeking placement according to the factors described in section 361.3, subdivision (a) (placement factors) [footnote omitted] and must document those efforts in the social study prepared under section 358.1.  (§ 361.3, subd. (a) [final para.].)"  (*Isabella G., supra,* at p. 719.)  The factors set forth in section 361.3, subdivision (a) are:  "(1)  The best interest of the child, including special physical, psychological, educational, medical, or emotional needs.  [¶]  (2) The wishes of the parent, the relative, and child, if appropriate.  [¶]  (3) The provisions of Part 6 (commencing with Section 7950) of Division 12 of the Family Code regarding relative placement.  [(4)  Placement of siblings and half siblings in the same home, unless that placement is found to be contrary to the safety and well-being of any of the siblings, as provided in Section 16002.]  [¶]  (5) The good moral character of the relative and any other adult living in the home, including whether any individual residing in the home has a prior history of violent criminal acts or has been responsible for acts of child abuse or neglect.  [¶]  (6) The nature and duration of the relationship between the child and the relative, and the relative's desire to care for, and to provide legal permanency for, the child if reunification is unsuccessful.  [¶]  (7) The ability of the relative to do the following:  [¶]  (A) Provide a safe, secure, and stable environment for the child.  [¶]  (B) Exercise proper and effective care and control of the child.  [¶]  (C) Provide a home and the necessities of life for the child.  [¶]  (D) Protect the child from his or her parents.  [¶] (E) Facilitate court-ordered reunification efforts with the parents.  [¶]  (F) Facilitate visitation with the child's other relatives.  [¶]  (G) Facilitate implementation of all elements of the case plan.  [¶] (H) Provide legal permanence for the child if reunification fails.  [¶]  ...  [¶]  (I) Arrange for appropriate and safe child care, as necessary.  [and]  [¶] (8) The safety of the relative's home."  (*Isabella G., supra,* at p. 719, fn. 9, quoting section 361.3, subd. (a).)

sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903 (2).) The federal placement provision also provides that if the Indian child's tribe "establish[es] a different order of preference by resolution, the agency or court effecting the placement shall follow such order so long as the placement is the least restrictive setting appropriate to the particular needs of the child . . . ." (25 U.S.C. § 1915 (c).) Similarly, section 361.31 states that "[n]otwithstanding the placement preferences listed in [the statute], if a different order of placement preference is established by the child's tribe, the court or agency effecting the placement shall follow the order of preference established by the tribe, so long as the placement is the least restrictive setting appropriate to the particular needs of the child . . . ." (§ 361.31, subd. (d).)

"The parties' contentions concern issues of statutory interpretation, which we review de novo." (*Anthony T., supra*, 208 Cal.App.4th at p. 1028.) "Statutes passed for the benefit of Indian tribes are to be liberally construed in favor of the tribes. [Citations.] Any ambiguity in statutes affecting an Indian tribe must be resolved in its favor. [Citation.] ICWA must be liberally construed in favor of the policy to defer to tribal judgment in Indian child custody matters. (Bur. of Indian Affairs Guidelines for State Courts; Indian Child Custody Proceedings, 44 Fed.Reg. 67584, 67585, § A (Nov. 26, 1979) (BIA Guidelines).)" (*Anthony T., supra,* at p. 1029.)

II

We agree with the parties that because A.F. is an Indian child, the juvenile court was required to follow the placement preferences set forth in section 361.31, subdivision (b), and Title 25, United States Code section 1915(b). (See § 361.31, subd. (a) ["In any

13

case in which an Indian child is removed from the physical custody of his or her parents or Indian custodian pursuant to Section 361, the child's placement shall comply with this section."].)[6] T.C. contends that because Donna, A.F.'s paternal grandmother, and Liesha, A.F.'s maternal cousin, are both extended family members, both homes are equally preferred for placement under these provisions, unless the Tribe established a different order of placement. On appeal, T.C. asserts that the Tribe's March 29, 2017 letter indicating its preference for placement with Liesha established a different order of placement, requiring the court to find good cause under section 361.31 before deviating from that order of placement.

The Agency argues the letter did not establish a different order of placement. Specifically, the Agency asserts that section 1915(c) of title 25 of the United States Code and section 361.31, subdivision (d), require the tribe to "set forth an *objective order of placement preferences* in a legally binding statement by the competent Tribal authority to necessitate a good cause finding to deviate" from those provisions' placement preferences.[7] The Agency argues that the statutory language and Bureau of Indian Affairs (BIA) regulations and the BIA's 2016 Guidelines for Implementing the Indian

---

[6]    California Rules of Court, rule 5.484, titled "Placement of an Indian child," likewise requires the juvenile court to follow the placement preferences set forth in section 361.31, subdivision (b), for all placements of Indian children, unless the court finds good cause to deviate from those preferences.

[7]    In her reply brief, T.C. contends that the Agency waived this argument because it did not assert it below. We reject this contention. In the juvenile court proceeding, the Agency opposed W.F.'s request to move A.F. to Donna's home and, therefore, had no occasion to assert the argument it makes on appeal.

14

Child Welfare Act make clear the Tribe's designation of a particular individual as a preferred placement is not sufficient to change the default placement preference set forth in ICWA and section 361.31, subdivision (b).

Section 1915(c) of title 25 of the United States Code indicates clearly that the Agency or court effecting placement of an Indian child must follow a different order of placement when the Tribe establishes that different order *by resolution.* (25 U.S.C. § 1915(c).)[8] (See *Professional Engineers in California Government v. Brown* (2014) 229 Cal.App.4th 861, 873 ["When the words are clear and unambiguous, there is no need for statutory construction or resort to other indicia of legislative intent, such as legislative history."].) Additionally, the BIA's 2016 regulations and official Guidelines provide clear direction as to what constitutes a tribal resolution for purposes of the statute.[9] (See *Nipper v. California Auto. Assigned Risk Plan* (1977) 19 Cal.3d 35, 45 ["We have generally accorded respect to administrative interpretations of a law and, unless clearly

---

[8]     The corresponding California provision, section 361.31, subdivision (c), does not conflict with this federal requirement. Although the state provision omits the language "by resolution" contained in the federal statute, T.C. does not argue that this difference requires a different interpretation of the state provision. We agree with the Agency that the almost identical state provision should be interpreted to be consistent with the federal provision. While we are cognizant of the state's ability to enact laws that are more protective of tribal interests then the federal provisions (see *R.R. v. Superior Court* (2009) 180 Cal.App.4th 185, 207), T.C. has provided no legal authority to support a broader reading of the state statute.

[9]     After the enactment of ICWA, the BIA issued nonbinding guidelines in 1979 to assist state and tribal courts with the interpretation of the act. (See BIA Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584 et seq. (Nov. 26, 1979).) In 2016, the BIA issued its first binding regulations under ICWA to improve its implementation, and a new set of corresponding guidelines. (See 81 Fed.Reg. 38778-01; BIA Guidelines for State Courts; Indian Child Custody Proceedings (81 Fed.Reg. 96476 et seq. (Dec. 30, 2016) (2016 Guidelines).)

15

erroneous, have deemed them significant factors in ascertaining statutory meaning and purpose."].) Like the statute, rule 23.131 of the 2016 BIA regulations states "[i]f the Indian child's Tribe has established *by resolution* a different order of preference than that specified in ICWA, the Tribe's placement preferences apply, so long as the placement is the least-restrictive setting appropriate to the particular needs of the Indian child . . . ." (25 C.F.R. § 23.131(c) (2017), italics added.)

In the BIA's regulatory explanation describing commentary it received from tribal interests before the regulations became final, the BIA noted comments suggesting "adding a provision to allow the court to consider the Tribe's recommended placement for an Indian child, to take into consideration Tribal custom, law, and practice when determining the welfare of Indian children, as authorized by section 1915(c), which states that the Tribe may establish a different order of preference." (ICWA Proceedings, 81 FR 38778, 38842.) In response, the BIA rejected the proposal and instead concluded that such an addition was contrary to the method of deviating from the default preferences enacted by Congress, which "established a method for the Tribe to express its preferences in section 1915(c). FR §§ 23.129(a), 23.130(b), and 23.131(c) are included in the final rule in recognition of that statutory requirement." (*Ibid*.) The same comment response

notes that state courts are not prohibited from also considering "a Tribe's recommended placement for a particular child."[10] (*Ibid.*)

Finally, the 2016 Guidelines provide that "State agencies should determine if the child's Tribe has established, *by resolution*, an order of preference different from that specified in ICWA. If so, then apply the Tribe's placement preferences. Otherwise, apply ICWA's placement preferences as set out in § 23.131." (2016 Guidelines, p. 56, italics added.) The same part of the guidelines explains that "[t]he statute requires that a Tribal order of preference be established by 'resolution' " and that "[w]hile different Tribes act through different types of actions and legal instruments, the Department understands that a Tribal 'resolution,' for this purpose, would be a legally binding statement by the competent Tribal authority that lays out an *objective order of placement preferences*." (2016 Guidelines, p. 56 (italics added).) These explanatory statements by the BIA bolster our interpretation of the statutory language contained in section 1915(c) of title 25 of the United States Code.

In sum, we agree with the Agency that the plain language of ICWA permits a Tribe to modify the default order of placement preferences set forth in section 1915(b) of title 25 of the United States Code and section 361.31, subdivision (b), *only* if the Tribe

---

10    In response to comments suggesting that the rule allow for different placement preferences to be "established by Tribal law or Tribal-State agreements," the BIA also stated it "recognizes that an order of preference established as part of a Tribal-State agreement would constitute an order of preference established by 'resolution,' 25 U.S.C. 1915(c), particularly as the statute specifically authorizes Tribal-State agreements respecting care and custody of Indian children. 25 U.S.C. 1919." (ICWA Proceedings, 81 FR 38778, 38840 (June 14, 2016).)

17

has done so by a resolution (or its equivalent) containing a different, objective order of placement. Under our interpretation of the law, the Tribe's March 29, 2017 letter did not modify the statutory placement preference because it provided the Tribe's preferred placement only in this specific case. (See *In re Liliana S.* (2004) 115 Cal.App.4th 585, 590 [holding tribal resolution designating a specific extended family member, the maternal great-grandmother, over another extended family member, the paternal grandmother, conflicted with the requirements of 25 U.S.C. § 1915]; *In re Julian B.* (2000) 82 Cal.App.4th 1337, 1345, fn. 3 [rejecting tribal resolution selecting one extended family member over the other; noting that a resolution designating specific extended family member did "not constitute a change in the order of placement preferences but constitutes instead an attempt to *designate* a specific placement"].)

Because Donna is a member of A.F.'s extended family and coequal to Liesha under the statutory placement preference order, the court's order placing A.F. with Donna complied with both section 1915(b) of title 25 of the United States Code and section 361.31, subdivision (b). Under these provisions, the juvenile court was not required to find good cause to place A.F. with Donna and its failure to do so was not reversible error. Instead, the Tribe's preference for placement with Liesha was a factor for the court's consideration in its placement decision.

III

As discussed, T.C.'s appeal hinges on her assertion that the Tribe altered the placement preferences set forth in ICWA and section 361.31, subdivision (b), requiring the court to find good cause to deviate from that preference. Because we reject this

18

assertion, we need not address T.C.'s argument that the error was not harmless because the evidence was insufficient to show good cause to support the court's placement order. To the extent that T.C.'s appeal can be construed as a challenge to the court's discretion to place A.F. with Donna, we agree with the Agency and A.F.'s counsel that the order was not an abuse of the court's wide discretion. Further, the court's use of the placement factors set forth in section 361.3 to make the placement determination was not inconsistent with ICWA's required placement preferences in this case.

Like section 361.31, section 361.3—the general statute governing the court's relative placement decision—"gives 'preferential consideration' to a relative request for placement, which means 'that the relative seeking placement shall be the first placement to be considered and investigated.' (§ 361.3, subd. (c)(1).)" (*Cesar V. v. Superior Court* (2001) 91 Cal.App.4th 1023, 1033.) "The Agency is *required* to assess those relatives seeking placement according to the factors described in section 361.3, subdivision (a) (placement factors) and must document those efforts in the social study prepared under section 358.1. (§ 361.3, subd. (a) [final par.].) When considering whether to place the child with a relative, the juvenile court must apply the placement factors, and any other relevant factors, and exercise its independent judgment concerning the relative's request for placement." (*Isabella G., supra,* 246 Cal.App.4th at p. 719, footnote omitted.) "The linchpin of a section 361.3 analysis is whether placement with a relative is in the best interests of the minor." (*Alicia B. v Superior Court* (2004) 116 Cal.App.4th 856, 862—863.)

19

We review the court's placement orders under the abuse of discretion standard of review; the court is given wide discretion and its determination will not be disturbed absent a manifest showing of abuse. (*In re Sarah S.* (1996) 43 Cal.App.4th 274, 286; see *In re Stephanie M.* (1994) 7 Cal.4th 295, 318 ["when a court has made a custody determination in a dependency proceeding, ' "a reviewing court will not disturb that decision unless the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations]." ' "].) " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*In re Stephanie M., supra*, at pp. 318—319.)

Here, the juvenile court looked to the placement factors set forth in section 361.3 subdivision (a), in deciding between two relatives who were both entitled to the same placement preference under ICWA, and who were both approved by the Agency for placement. Although the Agency's final report recommended that A.F. continue in her placement with Liesha, the evidence before the juvenile court supported its finding that placement with Donna was in A.F.'s best interest. Donna testified she was committed to caring for A.F. and to supporting T.C.'s reunification efforts, including facilitating visitation for T.C. Donna also testified she would support A.F.'s relationship with the Tribe and help educate A.F. about the Tribe's customs. In addition, the evidence before the juvenile court supported its finding that Liesha had inadequately addressed the severe diaper rash that afflicted A.F. This court is not permitted to reweigh the evidence or

20

second-guess the credibility determinations made by the juvenile court in its placement decision. Under this limited standard of review, we conclude the juvenile court did not abuse its discretion by placing A.F. with Donna.

DISPOSITION

The order is affirmed.


BENKE, Acting P. J.

WE CONCUR:



O'ROURKE, J.



DATO, J.

21

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re A.F., a Person Coming Under the Juvenile Court Law.<br><br>SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>T.C.,<br><br>     Defendant and Appellant. | D072226<br><br>(Super. Ct. No. EJ2481C)<br><br>ORDER CERTIFYING OPINION FOR PARTIAL PUBLICATION |

THE COURT:

The opinion filed November 29, 2017, was not certified for publication. The request pursuant to California Rules of Court, rule 8.1120(a), for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion, with the exception of part III, meets the standards for publication as specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be partially published in the Official Reports.

BENKE, Acting P. J.

Copies to: All parties