Filed 7/20/23  In re A.R. CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.R. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>O.P. et al.,<br><br>　　　Defendant and Appellant. | E079696<br><br>(Super.Ct.No. J291910-14)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

John P. McCurley, under appointment by the Court of Appeal, for Defendant and Appellant O.P.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant Jo.R.

1

Tom Bunton, County Counsel, and Tiffany Lok, Deputy County Counsel, for Plaintiff and Respondent.

After a contested disposition hearing, the juvenile court removed J.R. (male, born November 2020) and A.R. (male, born October 2021) (collectively, the Children) from the custody of appellants O.P. (Mother) and Jo.R. (Father) and ordered family reunification services for both parents. On appeal, both parents challenge the juvenile court's finding that the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)) does not apply.[1] For the reasons explained *post*, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

An initial referral on April 28, 2021, alleged general neglect of the Children's three half siblings, who are not subjects of this appeal. A second referral on August 5, 2021, alleged that Mother and Father engaged in domestic violence. A third referral on October 29, 2021, alleged that Mother suffered from depression. The Department's initial investigation determined that: (1) the three half siblings were safe in the custody of their father, Mother's estranged husband; and (2) Mother was a victim of domestic violence and needed assistance removing herself and the Children from Father and his family. The Department obtained a detention warrant for the Children on January 19, 2022, and A.R. was detained from Father that same day. When the Department served

---

[1] "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1 (*Benjamin M.*).)

the warrant and attempted to detain J.R., however, Father and paternal grandfather refused to release the child.

On January 24, 2022, petitions were filed alleging both Children come within the juvenile court's dependency jurisdiction under Welfare and Institutions Code[2] section 300, subdivision (b)(1). Each petition attached an Indian Child Inquiry Attachment stating Mother and Father were asked about the Children's Indian status on January 14, 2022, and they gave the social worker no reason to believe the Children were Indian children.

Mother first appeared in court at the initial detention hearing on January 25, 2022. She denied Indian ancestry on her Parental Notification of Indian Status and Parent: Family Find and ICWA Inquiry forms, and when asked by the juvenile court on the record. The court ordered both Children detained and removed from Father's custody, with A.R. maintained temporarily in Mother's custody. The court issued a protective custody warrant for J.R. and ordered that he be detained in an appropriate placement upon apprehension. J.R. was detained pursuant to that warrant on January 27, 2022, and the warrant was recalled on February 2, 2022. At that time, both Children were maintained in Mother's custody pursuant to the court's temporary January 25 orders.

Father first appeared in court at the continued contested detention hearing on February 15, 2022. He denied Indian ancestry on his Parental Notification of Indian Status form, and when asked by the juvenile court on the record. The court found a

---

[2] All further statutory references are to the California Welfare and Institutions Code unless otherwise specified.

prima facie case had been established that the Children came within section 300 and ordered them detained from both parents and placed in the temporary care of the Department.

The Department obtained another detention warrant on February 15, 2022, to remove both Children from Mother and Father and place them in an appropriate foster home. The Department attempted to serve the warrant and remove the Children without success on February 18. When Mother and Father remained uncooperative and failed to turn over the Children by February 22, the Department requested new protective custody warrants, which were issued the following day. In the meantime, the Department was able to locate the Children and take them into protective custody on February 22 after an eight-hour search of six different residences by deputies from both the Barstow and Victorville Sheriff stations.

Mother later claimed that the Children were, unbeknownst to her, with their paternal grandparents. She denied having any role in hiding the Children and stated that she cooperated with law enforcement in the search. Father also denied knowing the Children's whereabouts and stated that he, too, had assisted law enforcement in locating them. Mother's and Father's accounts were contradicted by a law enforcement report obtained by the Department and submitted to the court on April 28, 2022. The report includes statements from Father's adult daughter (the Children's half sister), A.R., and a friend of Mother's indicating that Mother brought the Children to A.R. on February 18, 2022, to babysit for the weekend. At some point thereafter, Mother told A.R. to deliver

4

the Children to Mother's friend.  The Children were subsequently picked up from Mother's friend's residence by her daughter, Crystal, and Father.  After the warrant was served at the paternal grandparents' residence and the Children were not found, a detective was able to reach Crystal to explain that a warrant had been issued for the Children.  She returned the Children on February 22, 2022, and the Department was able to take them into protective custody without further incident.

The protective custody warrants issued on February 23 were recalled on March 8, 2022.  That same date, Father filed another Parental Notification of Indian Status form again denying any Indian ancestry.

At the jurisdiction hearing on June 27, 2022, the juvenile court sustained allegations as amended pursuant to a partial mediation agreement that Mother and Father engaged in domestic violence in the presence of the Children.  On July 19, 2022, the Children were placed in the care of their half sister, A.R.  At the contested disposition hearing on August 22, 2022, the court found Father to be the presumed father of the Children, found that ICWA does not apply, declared the Children dependents of the court, ordered them removed from both parents, and ordered family reunification services to both Mother and Father.

Father and Mother timely appealed.

## DISCUSSION

"In 1978, Congress enacted the Indian Child Welfare Act (ICWA) out of concern that 'an alarmingly high percentage of Indian families are broken up by the removal,

5

often unwarranted, of their children from them by nontribal public and private agencies.' [Citations.] Congress found that many of these children were being 'placed in non-Indian foster and adoptive homes and institutions,' and that the States had contributed to the problem by 'fail[ing] to recognize the essential tribal relations of Indian people and the cultural and social standards prevailing in Indian communities and families.' [Citations.] This harmed not only Indian parents and children, but also Indian tribes." (*Haaland v. Brackeen* (2023) __ S.Ct. __ [2023 U.S.Lexis 2545 at *16-*17].) "ICWA declared that 'it is the policy of this Nation to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Federal standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture . . . .' [Citation.]" (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7-8.)

"Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case. These requirements are sometimes collectively referred to as the duty of initial inquiry. [Citation.]" (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 741.)

Father and Mother both contend that the Department is required by subdivision (b) of section 224.2 to ask extended family members about the children's possible Indian status as part of the duty of initial inquiry. They argue that the Department erred by failing to inquire of various extended family members who were readily available, including paternal grandparents, half sister A.R., and certain maternal relatives. They

6

therefore argue the juvenile court's finding that ICWA is inapplicable cannot stand, and we should remand for the Department to discharge its duty of initial inquiry.

A finding that ICWA does not apply implies that social workers had fulfilled their duty of inquiry. (*In re Q.M.* (2022) 79 Cal.App.5th 1068, 1079.) "On appeal, we review the juvenile court's ICWA findings for substantial evidence. [Citations.] But where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied." (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1051.) Where the parties' contentions concern issues of statutory interpretation, our review is de novo. (*In re A.F.* (2017) 18 Cal.App.5th 833, 842.)

The Department concedes that its initial inquiry was incomplete because certain extended family members available to the Department were not asked about the Children's Indian ancestry. However, "we are not 'bound' to accept a party's concession on a question of law." (*People v. Vivar* (2021) 11 Cal.5th 510, 524.)

In two recent decisions, this court has held that subdivision (b) of section 224.2 does not require that extended family members be asked about a child's Indian status at the initial inquiry stage unless the "child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306." (§ 224.2, subd. (b); see *In re Robert F.* (2023) 90 Cal.App.5th 492, 500 (*Robert F.*); *In re Ja.O.* (2023) 91 Cal.App.5th 672, 677-678 (*Ja.O.*).) Section 306 allows a social worker to take a child into the temporary custody of a county welfare department without a warrant under certain exigent circumstances where the child is threatened with imminent physical harm, or to receive a

7

child who was taken into temporary custody without a warrant by a peace officer under sections 305 or 305.6.  (*Robert F*., at pp. 500-501.)  Section 306, subdivision (b), requires the county welfare department, upon receiving temporary custody of a child, to inquire pursuant to section 224.2 whether the child is an Indian child, and subdivision (c) deems temporary custody of an Indian child to be an emergency removal under ICWA.  (*Robert F*., at p. 502-503.)

"By contrast, section 340 requires neither imminent danger nor the threat of physical harm for the court to issue a [protective custody] warrant."  (*Robert F*., *supra*, 90 Cal.App.5th at p. 501.)  Removal pursuant to this lower standard " ' would not be an "emergency removal" under federal law.' "  (*Id*. at p. 503.)  Unlike section 306, section 340 contains no reference to any duty to inquire into a child's Indian status.  (*Robert F*., at p. 502.)

As *Robert F*. explains, the legislative history shows that section 224.2, subdivision (b), implemented a recommendation of the Bureau of Indian Affairs (BIA) that when a child is subject to an emergency removal, state agencies should ask the child's extended family about the child's Tribal affiliation.  (*Robert F*., *supra*, 90 Cal.App.5th at p. 503.)  Nothing in the legislative history suggests that extended family members must be questioned in every dependency case.  (*Ibid*.)

The Children here were detained twice, both times pursuant to warrants issued under section 340.[3]  At no point were the Children in temporary custody under section 306.  Under this court's holdings in *Robert F.* and *Ja.O.*, the Department's obligation to question extended family members was not triggered.  We therefore affirm the juvenile court's findings and orders.

## DISPOSITION

The juvenile court's findings and orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:


McKINSTER
            Acting P. J.


FIELDS
            J.

---

**3**  Some of the warrants issued here were expressly designated as protective custody warrants, whereas others are called detention warrants and refer to Penal Code section 1524, which concerns search warrants.  The latter are identical in all respects to those deemed to have been issued pursuant to section 340 in *Ja.O.*  (See *Ja.O.*, *supra*, 91 Cal.App.5th at p. 678, fn. 3.)